IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BRUHN NEWTECH, INC.,                    )

      Plaintiff,                    )

                                Case No. 16-783C

v.                                      )    Judge Marian Blank Horn

THE UNITED STATES,                      )

      Defendant.                    )

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS BNT-US's FIRST AMENDED COMPLAINT**

Respectfully submitted,

/s/ Steven J. Lewicky

September 20, 2016

_____

Steven J. Lewicky, Esq.
Davis, Agnor, Rapaport & Skalny, LLC
10211 Wincopin Circle, Suite 600
Columbia, Maryland 21044
(410) 995-5800 (Telephone)
(410) 309-6161 (Facsimile)
slewicky@darslaw.com
Lead Attorney for Plaintiff

1

## Table of Contents

I.      Standard for grant of motions to dismiss .............................................................3

II.     The Government has sown confusion by introducing copyright registration filings
        from outside the pleadings, which have no relevance to Count I ........................................5

III.    This court has subject matter jurisdiction to adjudicate Plaintiff's claim that the
        Government breached the Contract by distributing Plaintiff's software to foreign
        nations' armed forces in violation of the Software License ................................................6

IV.     Plaintiff has asserted colorable claims of copyright infringement that this
        Court has jurisdiction to adjudicate ...................................................................................12

        A.      The beneficial owner of a copyright may assert a copyright claim to
                protect its interest.....................................................................................................12

        B.      Plaintiff's copyright claim is not barred by 28 U.S.C. § 1498(c) ........................15

        C.      Plaintiff's copyright claim is not time-barred.......................................................20

V.      Plaintiff has properly pled, as an alternative count, a claim for misappropriation
        of its trade secrets ..............................................................................................................22

VI.     Conclusion ..........................................................................................................................25

## Table of Authorities

**Cases**

*A&D Auto Sales, Inc. v. United States,* 48 F.3d 1142 (Fed. Cir. 2014)...............................6

*Admark Korea v. United States*, 2012 U.S. Claims LEXIS 604 (2012) .........................4

*Arbaugh v. Y & H Corp.,* 546 U.S. 500, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006)........... 17-19

*Armstrong v. Virgin Records*, 91 F. Supp. 628 (S.D.N.Y. 2000) .................................19

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .................4

*Astrazeneca Pharms. LP v. Aurobindo Pharma Ltd.*
*(In re Rosuvastatin Calcium Patent Litig.),*
2009 U.S. Dist. LEXIS 15063 (D. Del., 2009) ...............................................19

*Atkinson Company*, 996 F.2d 655, 659 (4th Cir. 1993) ...................................23

*A.V. v. iParadigms, L.L.C.*, 562 F.3d 630 (4th Cir. 2009)...............................12

*Bell v. Hood*, 327 U.S. 678, 66 S. Ct. 773, 90 L. Ed. 939 (1946)..........................17

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)................................4

*Brandt v. United States*, 710 F.3d 1369 (Fed. Cir. 2013) ...............................4

*Cambridge v. United States*, 558 F.3d 1331 (Fed. Cir. 2009) ..........................4

*Chapman Law Firm v. Greenleaf Constr. Co.*, 490 F.3d 934 (Fed. Cir. 2007)..............5

*Cortner v. Israel*, 732 F.2d 267 (2d Cir. 1984)...........................................14

*Cohen v. United States*, 94 Fed. Cl. 165 (2010) .......................................14, 22

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693 (2nd Cir. 1992) .....................23

*Data Gen. Corp. v. Grumman Sys. Support Corp.*, 795 F. Supp. 487 (D. Mass. 1992)...............23

*EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 111 S. Ct. 1227, 113 L. Ed. 2d 274 (1991) ..........18

*Eldred v. Ashcroft*, 537 U. S. 186, 123 S. Ct. 769, 154 L. Ed. 2d 683 (2003)..............5

*EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497 (E.D. Va. 2009).....................13

*Estate of William A. Stewart v. Sugar Hill Music Publ.*,
2012 U.S. Dist. LEXIS 141609 (S.D.N.Y., 2012) ........................................................19

*Fantasy, Inc. v. Fogerty*, 654 F. Supp. 1129 (N.D. Cal. 1987)......................................14

*Federal-Mogul World Wide, Inc. v. Mahle GmbH*,
2012 U.S. Dist. LEXIS 27280 (E.D. Mich., 2012) ........................................................19

*Ferreiro v. United States*, 350 F.3d 1318 (Fed. Cir. 2003) ............................................6

*Firoozye v. Earthlink Network*, 153 F.Supp.2d 1115 (N.D. Cal. 2001) ........................23

*Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) ............4

*Harper & Row, Publrs. v. Nation Enters.*,
471 U.S. 539, 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985).................................................23

*Harper & Row, Publrs. v. Nation Enters.*,
471 U.S. 539, 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985).................................................12

*Harper & Row Publishers, Inc. v. Nation Enterprises*, 723 F.2d 195 (2nd Cir. 1983) ................22

*Hotaling v. Church of Latter-Day Saints*, 118 F. 3d 199 (4th Cir. 1997)........................20

*Keen Corp. v. U.S.*, 508 U.S. 200, 113 S. Ct. 2035, 124 L. Ed. 2d 118 (1993)..............24

*Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009)............................................19

*Land v. Dollar*, 330 U.S. 731, 67 S. Ct. 1009, 91 L. Ed. 1209 (1947) ...........................6

*Leonardo v. United States*, 55 Fed. Cl. 344 (2003) ........................................................18

*Litecubes, L.L.C. v. N. Light Prods.*, 523 F.3d 1353 (Fed. Cir. 2008)................... 16-19

*Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789 (2001) ...............................20

*McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354 (Fed. Cir. 2007) ......................................4

*M-I Drilling Fluids UK Ltd. v. Dynamic Air Inc.*, 99 F. Supp. 3d 969 (D. Minn. 2015) .............19

*MOB Music Publ'g v. Zanzabar on the Waterfront, LLC*,
698 F. Supp. 2d 197, 206 (D.D.C. 2010)........................................................................20

*Moran v. London Records, Ltd.*, 827 F.2d 180 (7th Cir. 1987)......................................14

*Moyer v. United States*, 190 F.3d 1314 (Fed. Cir. 1999)..................................................6

*Patton v. United States,* 64 Fed. Cl. 768 (2005) ...................................................................4

*Peter Pan Fabrics, Inc. v. Acadia Company,* 173 F. Supp. 292 (D. NY 1959).............................14

*Pucciariello v. U.S.,* 116 Fed. Cl. 390 (2014)........................................................................6

*Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746 (Fed. Cir. 1988)...............................4, 6

*Rocovich v. United States,* 933 F.2d 991, 994 (Fed. Cir. 1991) ...............................................6

*Roley v. New World Pictures, Ltd.,* 19 F.3d 479 (9th Cir. 1994)................................................21

*Rosciszewski v. Arete Assocs., Inc.,* 1 F.3d 225 (4th Cir. 1993) ................................................22

*RT Computer Graphics, Inc. v. United States,* 44 Fed. Cl. 747 (1999) ......................................13

*Scheuer v. Rhodes,* 416 U.S. 232, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974) ...............................4

*Shropshire v. Canning,* 809 F. Supp. 2d 1139 (N.D. Cal. 2011) ...............................................19

*Sony Corp. of Am. v. Universal City Studios, Inc.,*
464 U.S. 417, 104 S. Ct. 774, 78 L. Ed. 2d 574 (1984)..........................................................13

*Sommers Oil Co. v. United States,* 241 F.3d 1375 (Fed. Cir. 2001)............................................5

*S.O.S., Inc. v. Payday, Inc.,* 886 F.2d 1081 (9th Cir. 1989)......................................................23

*Steel Co. Steel Co. v. Citizens for a Better Env't,*
523 U.S. 83, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998).........................................................17

*Subafilms, Ltd. v. Mgm-Pathe Communs. Co.,* 24 F.3d 1088 (9th Cir. 1994).................. 17, 19-20

*Taylor v. Ocwen Loan Servicing, LLC,* 2012 U.S. Dist. LEXIS 165793 (S.D. Tex., 2012) .........19

*Trandes Corp. v. Guy F. Atkinson Co.,* 996 F.2d 655 (4th Cir. 1993) ............................. 12, 22-23

*Trusted Integration, Inc. v. United States,* 659 F.3d 1159 (Fed. Cir. 2011) ...................................4

*United States Marine, Inc. v. United States,* 722 F.3d 1360 (Fed. Cir. 2013) ........................ 23-24

*Wechberg v. United States,* 54 Fed. Cl. 158 (2002)............................................................. 21-22

*Wood v. Houghton Mifflin Harcourt Publ. Co.,* 569 F. Supp. 2d 1135 (D. Colo. 2008)...............19

*Woodbury v. United States,* 313 F.2d 291 (9th Cir. 1963)........................................................24

**Statutes**

17 U.S.C §101................................................................................................5

17 U.S.C §106................................................................................................13

17 U.S.C §302................................................................................................5

17 U.S.C § 501................................................................................................13

17 U.S.C. § 507................................................................................................20

28 U.S.C. § 1338................................................................................................12, 15

28 U.S.C. § 1346................................................................................................23

28 U.S.C. § 1491................................................................................................23

28 U.S.C. § 1498................................................................................ 12, 15, 18, 20-22

28 U.S.C. § 2674................................................................................................23

41 U.S.C. § 7103................................................................................................22

**<u>Table of Exhibits</u>**

Exhibit A to Amended Complaint – Proposal to Government

Exhibit B to Amended Complaint – Contract

Exhibit C to Amended Complaint -- Software License

Exhibit D to Amended Complaint – Certified Claim

Exhibit E to Amended Complaint – Contracting Officer's decision

Exhibit F to Amended Complaint – Rohrback Declaration and attached email messages

Exhibit G to Amended Complaint – Install Screen

Exhibit H to Amended Complaint – "About" Screen

Exhibit I – Parent-Subsidiary Software License Agreement

Exhibit J -- Federal Express Deliver Certifications

Exhibit K -- Declaration of Bruce Windesheim

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BRUHN NEWTECH, INC., | ) | |
| Plaintiff, | ) | |
| | | Case No. 16-783C |
| v. | ) | Judge Marian Blank Horn |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS BNT-US's FIRST AMENDED COMPLAINT

Plaintiff Bruhn New Tech, Inc. ("BNT-US"), by and through its undersigned attorneys, for the reasons set forth in the following memorandum, hereby opposes Defendant's Motion to Dismiss BNT-US's First Amended Complaint (*Doc. 17*) (the "Motion").

## MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

BNT-US, and its corporate parent Bruhn NewTech A/S ("BNT-Denmark"), are in the business of developing, marketing and selling commercial computer software created by BNT-Denmark, which is sold worldwide and is utilized in military systems that track and analyze chemical, biological, radiological and nuclear agents ("CBRN") in battlefield or civilian environments. *Amd. Cmpl. (Doc. 14), ¶ 7.* BNT-Denmark has registered copyrights in the United States on the computer source code within the software that is the subject of this action ("the Software"). One such copyright registration covers the computer source code as it existed within the Software on the date it was first delivered to the United States Government ("Defendant" or "the Government") in 1998 (U.S. Copyright Reg. No. TX 7-836-500), and the other registration covers software code reflecting updates and enhancements undertaken between

initial delivery to the Government and the date on which the acts of infringement alleged in the Complaint took place (U.S. Copyright Reg. No. TX 7-836-490).[1]  *Amd. Cmpl, ¶ 71.*  As discussed in more detail later in this brief, there is no overlap in these registrations. Reg. No. TX 7-836-500 covers the code as it was delivered to the Government in 1998, and Reg. No. TX 7-836-490 covers only the updates and enhancements to the 1998-delivered software code that were subsequently delivered between 1998 and the date on which the acts of infringement alleged in the Complaint took place in 2013.  *Decl. of B. Windesheim, ¶ 3.*

For many years, BNT-Denmark has authorized BNT-US to market and license the Software to countries and government organizations outside of Europe, while BNT-Denmark has marketed and licensed the Software to countries and organizations in Europe.  *Amd. Cmpl, ¶ 30.* These efforts have resulted in the Software being licensed to a large number of national governments and their militaries,  *Amd. Cmpl, ¶ 31,* including a license granted to the United States Government in 1998 (the "Software License"), which is memorialized in U.S. Government Contract No. M67854-98-C-2076 (the "Contract").[2]  *Amd. Cmpl, ¶ 9, 18.*   The Software has been used by the Government continuously since the date of Contract award, to integrate CBRN data, sensor alert information, and observation reports from battlefield or civilian environments, and to generate plots of the hazard area and warning messages to military units or civilian authorities to warn of CBRN hazards.  *Amd. Cmpl, ¶ 20.*  Pursuant to the Software License granted to Defendant, the Government is prohibited from giving, selling, licensing or otherwise providing copies of the Software to any third party, or to governments of

---

[1] Copies of these two registration certificates are attached to the Government's Motion as Exhibits A and B thereto.

[2] The terms "Software License" and "Contract" have the same meaning herein as defined in the First Amended Complaint.

foreign countries. *Amd. Cmpl,* ¶¶ *33, 65.* Relying upon the contractual protections agreed to by the Government through this Software License, BNT-US provided the Software to the Government in "undongled" form, i.e., without hardware technological barriers to copying the Software. *Amd. Cmpl,* ¶ *34.*

As set forth in the Complaint, the Government breached the Contract in 2013 when it provided un-protected copies of the Software to the Republic of Korea ("ROK") and Jordan in violation of the terms of the Software License. *Amd. Cmpl,* ¶ *63.* The Software License was unlimited and perpetual, as were the restrictions stated in the license prohibiting the Government from giving, selling, licensing or otherwise providing copies of the Software to any third party or to governments of foreign countries. *Amd. Cmpl,* ¶ *65* (referencing Ex. B to Amd. Cmpl, at 13; Ex. C to Amd. Cmpl, at 2).[3] Nothing in the Contract or the Software License suggests that the Government had the right to transfer the Software to a foreign government after the term of the contractual software maintenance period, or after any other period of time.[4] *Amd. Cmpl,* ¶ *65.* The Government's actions in 2013 also constituted violations of copyright, *Amd. Cmpl,* ¶¶ *70-75,* and tortious misappropriation of trade secrets. *Amd. Cmpl,* ¶¶ *77-83.*

I.   **Standard for grant of motions to dismiss**.

In deciding a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the United States Court of Federal Claims ("RCFC"), the court must accept as

---

[3] The exhibits to the original Complaint and the exhibits to the Amended Complaint are identical to each other. Copies of these exhibits, to be associated with the Amended Complaint in the court's file, are attached hereto as Exhibits A through H.

[4] The Government recites in its Motion that the Contract "closed on June 3, 2004." M*otion, p. 3.* To the extent the Government is suggesting that the Software License terminated when the Contract "closed," this begs the question of whether the Government believes that it took ownership of the source code at that time, or perhaps that the source code thereupon entered the public domain. Any such claim(s) would be contrary to law, and are wholly unsupported by the Government in its brief.

true all undisputed facts in the pleadings and draw all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974), *abrogated on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)); *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed. Cir. 1988). The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Brandt v. United States*, 710 F.3d 1369, 1373 (Fed. Cir. 2013). The relevant issue under RCFC 12(b)(1) "'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Patton v. United States,* 64 Fed. Cl. 768, 773 (2005) (quoting *Scheuer,* 416 U.S. at 236).

In resolving a motion to dismiss for failure to state a claim under RCFC 12(b)(6), the court must assess whether Plaintiff's complaint adequately states a claim for relief under the implicated statute and regulations, and whether Plaintiff has made allegations plausibly suggesting entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); see also *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009); *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356-57 (Fed. Cir. 2007); *Admark Korea v. United States*, 2012 U.S. Claims LEXIS 604 (2012). Factual allegations need only be sufficiently detailed to "raise a right to relief above the speculative level on the assumption that all the allegations in the [pleading] are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted). The court is to "'accept as true all factual allegations in the complaint, and . . . indulge all reasonable inferences in favor of the non-movant'" to evaluate whether the plaintiff has stated a claim upon

which relief can be granted. *Chapman Law Firm v. Greenleaf*, 490 F.3d 934, 938 (Fed. Cir. 2007) (quoting *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001)).

## II.     The Government has sown confusion by introducing copyright registration filings from outside the pleadings, which have no relevance to Count I.

The Government appears to be confused by information set forth in the copyright registration certificates that it attaches as exhibits to its Motion.  These documents were not part of Plaintiff's breach of contract claim, and have been brought in from outside the pleadings by the Government.  While they may have some limited relevance to Count II of the Complaint, they have no relevance to the breach of contract/license claim asserted in Count I.

Although the Software was delivered to the Government in mid-1998, its "first publication date," for copyright registration purposes, was in January 1999. *Exh. A to Motion*. "Publication" is a term of art under copyright law, indicating that copies of the work have been distributed to the public by sale or other transfer of ownership, rental, lease, or lending. *17 U.S.C. §101*. In 2014, BNT-Denmark obtained U.S. copyright registration of the software code as it existed when the Software was delivered to the Government in or about May 1998.  This software code had a "date of first publication," for copyright registration purposes, of January 12, 1999, based upon other deliveries undertaken after delivery to the Government.  This was so even though the same software was delivered to the Government, pursuant to a direct sale, in or about May 1998.  Although "publication" first took place in January 1999, copyright protection of the work began at its creation, *17 U.S.C §302*; *Eldred v. Ashcroft*, 537 U. S. 186, 194-195, 123 S. Ct. 769, 154 L. Ed. 2d 683 (2003), and the Software enjoyed copyright protection at the time of its delivery to the Government in or about May 1998.  Similarly, when obtaining U.S. copyright registration of later updates to the Software (Reg. No. TX 7-836-490), BNT-Denmark established a "year of completion" for these updates and modifications of 2008, and a "date of

5

first publication" of these updates of September 28, 2012. *Exh. B to Motion*. To the extent the Government believes these filings with the Copyright Office suggest that distinct or separate software products were delivered to the Government on dates after May 1998, the Government misunderstands the registration documents that it references, and the nuances of U.S. copyright registration.

III.    **This court has subject matter jurisdiction to adjudicate Plaintiff's claim that the Government breached the Contract by distributing Plaintiff's software to foreign nations' armed forces in violation of the Software License.**

The Government asserts that "BNT-US's breach of contract claims with respect to "the 2008 Software" are jurisdictionally deficient, alleging that BNT-US presented a breach of contract/license claim to the Contracting Officer that arose from "1998 Software," and further alleging that BNT-US later presented a claim in Count I of its Complaint arising from what the Government terms "2008 Software." *Motion, p. 8*. Although the Government repeatedly refers to "2008 Software," no such "2008 Software" exists. *Decl. of B. Windesheim, ¶ 2*.[5] The Government presumably conjured this purported "2008 Software" from the "year of completion" that is recited in the copyright certificate for later source code updates. *Exh. B to Motion*. As

---

[5] The Declaration of Bruce Windesheim, president of BNT-US, is attached hereto as Exhibit K. In considering a motion to dismiss for lack of subject matter jurisdiction challenging the truth of jurisdictional facts alleged in the complaint, the court may make findings of fact pertinent to its jurisdiction. *Ferreiro v. United States,* 350 F.3d 1318, 1324 (Fed. Cir. 2003) (citing *Moyer v. United States,* 190 F.3d 1314, 1318 (Fed. Cir. 1999), and *Reynolds,* 846 F.2d at 747); *Pucciariello v. United States*, 116 Fed. Cl. 390 (2014). In doing so, the court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including declarations or affidavits. *Rocovich,* 933 F.2d at 994 (citing *Land v. Dollar,* 330 U.S. 731, 735 n.4, 67 S. Ct. 1009, 91 L. Ed. 1209 (1947), and *Reynolds,* 846 F.2d at 747). In considering a motion to dismiss for failure to state a claim, the court is primarily to examine the allegations in the complaint, but may also consider "'matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record.'" *A&D Auto Sales, Inc. v. United States,* No. 2013-5019, 748 F.3d 1142, 2014 U.S. App. LEXIS 6338, 2014 WL 1345499, at *1 (Fed. Cir. Apr. 7, 2014)(quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)); *Pucciariello, Id.*

explained in the previous section of this brief, however, this registration was only of updates and enhancements to the software code that were undertaken after its initial delivery in 1998, and before the acts of infringement in 2013.  In fact, the "year of completion" stated for the software code that forms the basis for Count I was 1998.  *See Exh. A to Motion.*[6]

The Government relies upon its misunderstanding of the registration certificate for post-1998 software code updates (Reg. No. TX 7-836-490) to repeatedly assert that there is (non-existent) "2008 Software," separate and distinct from "1998 Software." *Motion, pp. 4, 8-11.*  The Government complains that BNT-US' allegations "vaguely refer to 'the Software' without distinction, *Motion, p. 8, n.3,* but there is, in fact, no distinction to be made between purported multiple items of software.  The software code that the Government distributed to the armed forces of the ROK and Jordan in 2013 incorporated the same software source code that the Government took delivery of in 1998, which is the subject of the Software License.  *Decl. of B. Windesheim, ¶ 4.*  This is the same software source code that Plaintiff sought recourse for in its certified claim to the Government.  The fact that the Government accepted updates and additions to this software source code during the years in and after 1998, and referred to Plaintiff's software product by different names in the context of various uses and deployments, does not change the fact that the Government was still bound by the Software License.

---

[6] The Government may also be confused by a typographical error that was incorporated at p. 8 of the original Complaint, substituting "2008" for "1998." *Amd. Cmpl., ¶ 29.* Plaintiff filed an unopposed motion seeking leave to amend its original Complaint to correct this typographical error, *Doc. 13,* and has submitted a First Amended Complaint correcting the error. *Doc. 14.*  It is worth noting that Footnote 1 to paragraph 29 the original Complaint states three times that the software was completed in 1998.  Read in context, it is clear that the statement within paragraph 29 of the original Complaint, that the software code was completed in 2008, was a typographical error.

Within the four corners of the pleadings, the Government is wrong when it asserts, at footnote 3 of its brief, that there are "two software versions" discussed in the Amended Complaint.  As the Government deployed the Software for various purposes and theaters, it changed what it called the Software.  *Decl. of B. Windesheim, ¶ 5.*  In the Contract itself, the Software was called "Bruhn NewTech NBC Analysis software" and "NBC-ANALYSIS" software (and is therefore referred to as "NBC Analysis-CRID 0040" in copyright registration documents, when registration was later obtained on software code as it existed on the date of delivery to the Government (Reg. No. TX7-836-500)).  *Id.*  The Government later called it, at various times, "CBRN-ANALYSIS," "JWARN 1A," "JWARN 1B," "JWARN 1C," "JWARN 1D," "JWARN 1E," "JWARN 1F," "Signal Fire," and perhaps other names, as it deployed the Software in different theaters of operation.  *Id.*  For deployment in the ROK, the program within which the Software was used was called "Signal Fire," and the Software in that context was referred to by the Government as "NBC Analysis JWARN 1F Phase 2."  *Id.*  The Government appears to confuse its many re-designations of the Software arising from different uses and deployments of the Software with changes to the Software code itself.  Regardless of how many times the software was re-named or re-titled by the Government or anyone else after the Contract date, the Complaint states clearly that the defined term "Software" "refers to the subject software licensed by Plaintiff to the Government under the Contract," regardless of its designation. *Amd. Cmpl, ¶ 14.*  This software code, delivered to the Government in 1998 and later registered for copyright protection as Reg. No. TX 7-836-500, forms the basis for the breach of contract/license claim in the certified claim made on the Government in 2015, and is the basis for the breach of contract/license claim set forth in Count I. *Decl. of B. Windesheim, ¶ 6.*

The Government contends in its Motion that, while BNT-US' certified claim to the Contracting Officer was based upon software code that was delivered to the Government in 1998, BNT-US' Amended Complaint is purportedly based upon distribution of allegedly different "software that was created in 2008, four years after the Contract ended, and five years before the alleged breach." *Motion, p. 9*. This is untrue. As explained above, there is no "2008 Software." In its Amended Complaint BNT-US seeks review of the Contracting Officer's Final Decision (the "Decision") concerning a claim under the Contract. *Amd. Cmpl, ¶ 2*. The certified claim submitted to the Contracting Officer was for breach, by the government, of a software license that was contained within the Contract, by the unauthorized publication and distribution of software code that BNT-US delivered to the government pursuant to the Contract. *Id*. The term "Software" in the Amended Complaint expressly refers to the software licensed by BNT-US to the Government under the Contract, regardless of how the Government changed the Software's designation over time. *Amd. Cmpl, ¶ 14*. In its certified claim, BNT-US asserted that the Government "breached the Contract's Software License by allowing the provision of no less than seven laptop computers containing BNT software to the armed forces of the Republic of Korea without adequate protection against copying or software piracy, and by providing an unknown number of copies of the software to the Jordanian Air Force." *Exh. D to Amd. Cmpl, p. 1*. BNT-US further recited in its certified claim that the subject Software "was originally known as "NBC-ANALYSIS" software, and was later re-designated as "CBRN-ANALYSIS" software," and by the time of the alleged breach of contract was designated by the Governments within the Korean theater of operations as ""JWARN Signal Fire" or "JWARN Block 1F Signal Fire." *Exh. D to Amd. Cmpl, pp. 4, 6*. The software code that BNT-US delivered to the Government 1998, was the <u>same</u> software code that the Government distributed to ROK and

9

Jordanian armed forces in 2013, with only non-core updates and enhancement that did not alter its primary functionality or character.  By that time, in the context of the Korean theater of operations, the Government was referring to the deployed and distributed software as "JWARN Signal Fire" and as "JWARN Block 1F Signal Fire."

In 2014, in advance of asserting is present claim against the Government, BNT-Denmark registered, concurrently, both: (1) the Software's source code as it existed when it was delivered to the Government in 1998 (Reg. No. TX7-836-500), and (2) additional source code that had been added to the Software at various points after that time, to accommodate Government requirements, new uses, and deployments (Reg. No. TX7-836-490). *Decl. of B. Windesheim, ¶ 7.* In the registration, these cumulative source code <u>updates</u> were labelled as: "NBC Analysis JWARN 1F Phase 2, CRID 1489, 1490, 1491." *Id.*  There is no overlap between the software source code covered by these two registrations.  *Id.*  One is for the Software as conveyed to the government in 1998 (Reg. No. TX7-836-500), and the other is only for source code updates thereafter made to accommodate Government requirements and usability (but not the originally conveyed software source code itself) (Reg. No. TX7-836-490).  *Id.*  The "Reg. No. TX7-836-490" code is relevant only to Counts II and III of the Complaint (for copyright infringement and misappropriation of trade secrets).  It is not relevant to Plaintiff's breach of contract/license claim in Count I, nor was it the basis for the breach of contract/license claim asserted in Plaintiff's certified claim to the Government in 2015. The source code updates registered as Reg. No. TX7-836-490 are not a distinct software product that could be sold as free-standing software outside of the context of updating the software originally delivered to the Government in 1998. It was not sold to the ROK, Jordan, or any other nation, as freestanding software product. Obtaining separate copyright registrations for (1) the source code delivered in 1998, and (2) the

additional code thereafter added as updates, was solely to accommodate a comprehensive copyright infringement claim, and has no relevance to the fact that the Government breached the Software License when it distributed to the ROK and Jordan the source code that it took delivery of in 1998.

The Government alleges that BNT-US's allegations cannot "plausibly establish" that the Government distributed to the ROK and Jordan the software code that was the subject of the 1998 Contract, and posits that BNT-US must be alleging that (non-existent) "2008 Software" was transferred in 2013, which the Government asserts (without any evidentiary support) "was created specifically for JWARN Block 1F." *Motion, p. 11.* This exposes the danger of a party bringing in "facts" from outside the pleadings, prior to any discovery, in an effort to obtain dismissal on jurisdictional grounds. The Government's acceptance of updates and enhancements to the originally-delivered software code during the years after 1998, and reference to the software product by different names in the context of various uses and deployments, does not change the fact that it was prohibited from transferring to foreign nations the software source code that it took delivery of in 1998. Yet it did just that in 2013. Regardless of how many times the Software was re-named or re-titled by the Government after the Contract date, as it deployed it in different theaters and for varied purposes, the defined term "Software" "refers to the subject software licensed by Plaintiff to Defendant under the Contract." *Amd. Cmpl, ¶ 14.* Importantly, and as noted in the Amended Complaint, each time BNT-US rolled out a source code update to accommodate Government deployments and new users, the Government acknowledged and

affirmed, in writing, its ongoing obligations under the Contract and the incorporated Software

License.[7]  *Amd. Cmpl., ¶ 47.*

IV.   **Plaintiff has asserted colorable claims of copyright infringement that this court has jurisdiction to adjudicate.**

A.   The beneficial owner of a copyright may assert a copyright claim to protect its interest.

By statute, the District Courts are granted "original jurisdiction of any civil action arising

under any Act of Congress relating to…copyrights…." 28 *U.S.C. § 1338(a)*, except:

> …whenever the copyright in any work protected under the copyright laws of the
> United States shall be infringed by the United States…or by a contractor,
> subcontractor, or any person, firm, or corporation acting for the Government and
> with the authorization or consent of the Government, the exclusive action which
> may be brought for such infringement shall be an action by the copyright owner
> against the United States in the Court of Federal Claims for the recovery of his
> reasonable and entire compensation as damages for such infringement, including
> the minimum statutory damages as set forth in section 504(c) of title 17, United
> States Code…

*28 U.S.C. § 1498(b).*  As the holder of registered United States copyrights on the computer

source code within the Software, BNT-Denmark enjoys "a bundle of exclusive rights"

under Section 106 of the Copyright Act (17 U.S.C. § 106 (2012)), *Harper & Row, Publrs. v.*

*Nation Enters., 471* U.S. 539, 546, 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985), including the right

to copy, publish, and distribute an author's work, and the right to prepare derivative works.  *A.V.*

*v. iParadigms, L.L.C.*, 562 F.3d 630, 636 (4th Cir. 2009); *Trandes Corp. v. Guy F. Atkinson Co.*,

996 F.2d 655 (4th Cir. 1993).  Anyone who violates any of the exclusive rights of the copyright

---

[7] In footnote 4 of the Motion, counsel for the Government relates that he "independently searched
for any contract with BNT-US that could have resulted in the procurement of the 2008 Software,
but the searches have not identified the relevant contract(s)."  This provides further confirmation
that the purported "2008 Software" that the Government bases its jurisdictional challenge upon
does not exist.  If the Government's theory of separate and distinct "2008 Software" were
supported by fact, then how did the Government obtain this "2008 Software" without an
associated acquisition contract?

owner, that is, anyone who trespasses into his exclusive domain by using or authorizing the use

of the copyrighted work . . . "is an infringer of the copyright." *Sony Corp. of Am. v. Universal*

*City Studios, Inc.*, 464 U.S. 417, 433, 104 S. Ct. 774, 78 L. Ed. 2d 574 (1984) (quoting 17 U.S.C.

§ 501(a)); *A.V.*, 562 F.3d at 636; *EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497 (E.D. Va.

2009).  BNT-US attached to its original Complaint (and later re-submitted in an exhibit to its

Amended Complaint) emails indicating that the Government distributed the Software without

authorization or permission of the copyright holder, *Exh. F to Amd. Cmpl.*, in contradiction of

BNT-Denmark's exclusive right under 17 U.S.C. § 106 to determine whether and when to copy

or distribute these works.

As noted by the Government in its Motion, this court applies the substantive law of Title

17 when evaluating copyright infringement claims against the Government.  *RT Computer*

*Graphics, Inc. v. United States*, 44 Fed. Cl. 747, 754 (1999).  In suggesting that BNT-US lacks

standing to take action to enforce BNT-Denmark's copyrights, the Government points to the fact

that copyrights to the Software are registered by BNT-Denmark, not BNT-US.  *Motion, p. 14*.

The Amended Complaint states, however, that "[f]or many years…BNT-Denmark has

authorized [BNT-US] to market and sell Software licenses to countries and governments outside

of Europe." *Amd. Cmpl, ¶ 30*.  In a Non-Exclusive Software License Agreement between BNT-

Denmark and BNT-US dated December 5, 1997, a copy of which is attached hereto as Exhibit I

(the "Parent-Subsidiary Agr."), BNT-Denmark granted BNT-US the right to sell, lease, market,

demonstrate and distribute the software in certain territories, including the United States.

*Parent-Subsidiary Agr., p. 5*.  U.S. registration of the subject copyrights was undertaken by the

corporate parent, BNT-Denmark, but its BNT-US subsidiary had the right to license the subject

Software to the Government, and did so within the Contract.  While BNT-Denmark retains all

copyrights in and to the software, the Parent-Subsidiary Agreement granted to BNT-US "the concurrent right to prosecute and defend any and all copyright…infringements, violations or any other actions within the United States, Canada, or [the] Far East during the term of the Agreement." *Id., p. 6.* The Parent-Subsidiary Agr. remains in force and effect today, and protection of the copyrights is vital to BNT-US' business of licensing the Software to new customers outside Europe. *Decl. of B. Windesheim, ¶ 8.*

A beneficial owner of a copyright may bring an infringement action to protect its economic interest. *Cortner v. Israel*, 732 F.2d 267, 270-71 (2d Cir. 1984); *Cohen v. United States*, 94 Fed. Cl. 165, 171 (2010). A beneficial owner is a person or entity with an economic interest in the copyright. *Id.* For example, an author that has conveyed exclusive rights in a work in exchange for royalty payments is the beneficial owner of the work, *Moran v. London Records, Ltd.*, 827 F.2d 180, 183 (7th Cir. 1987), and has standing to bring an infringement suit as a beneficial owner. *Fantasy, Inc. v. Fogerty*, 654 F. Supp. 1129, 1131 (N.D. Cal. 1987); *Cortner*, 732 F.2d at 270-71; *Cohen*, 94 Fed. Cl. 165, 171. As the holder of a valuable right to sell, lease, market, demonstrate and distribute the software in the United States and other areas outside of Europe, and with the express contractual right "to prosecute and defend any and all copyright…infringements, violations or any other actions within the United States, Canada, or [the] Far East during the term of the Agreement," BNT-US is a beneficial owner of the subject copyrights, empowered to enforce the marks.[8] To the extent the court were to hold that BNT-US

---

[8] Even before the concept of "beneficial owner" was well-developed in copyright law, the court in *Peter Pan Fabrics, Inc. v. Acadia Company*, 173 F. Supp. 292 (D. NY 1959) found that, where registration of a copyright is undertaken by one entity in a parent-subsidiary relationship but reproduction and publishing is undertaken by the other entity in such relationship, both the parent and the subsidiary may enforce the copyright. *Peter Pan Fabrics*, 173 F. Supp. at 297. The court in that case noted that the legitimacy of one party to a parent-subsidiary relationship being the proprietor of a copyright with the other party to the relationship causes the work to be

is not a beneficial owner with rights to enforce the BNT-Denmark copyrights, or that BNT-Denmark is a necessary party to the copyright infringement action set forth in Count II, BNT-US requests that BNT-Denmark be granted leave to intervene as an additional plaintiff, with regard to Count II.

  B. Plaintiff's copyright claim is not barred by 28 U.S.C. § 1498(c).

  The District Courts are granted "original jurisdiction of any civil action arising under any Act of Congress relating to…copyrights…," 28 *U.S.C. § 1338(a)*, but:

> …whenever the copyright in any work protected under the copyright laws of the United States shall be infringed by the United States…or by a contractor, subcontractor, or any person, firm, or corporation acting for the Government and with the authorization or consent of the Government, the exclusive action which may be brought for such infringement shall be an action by the copyright owner against the United States in the Court of Federal Claims for the recovery of his reasonable and entire compensation as damages for such infringement, including the minimum statutory damages as set forth in section 504(c) of title 17, United States Code…

*28 U.S.C. § 1498(b)*.  Subsection (c) of the statute goes on to state:  "The provisions of this section shall not apply to any claim arising in a foreign country."  *28 U.S.C. § 1498(b)*.  As discussed below, dismissal of Plaintiff's claims based on extraterritorial application of the Copyright Act is inappropriate under the facts of this case.  The court should not even reach this issue, however, because this is a factual question subject to proof at trial, and not a jurisdictional question.

  Plaintiff has not yet had opportunity to conduct discovery regarding whether the acts of infringement by the Government and its contractors were undertaken exclusively at locations outside the United States, or were directed by, authorized by, or undertaken in concert with these

---

reproduced, published and copyright is explicitly sanctioned in the Copyright Act, and termed an argument that non-registering party to this relationship could not enforce the other party's copyright "specious." *Id.*

contractors' management and operations in the United States, or in concert with employees and officers of the Government located within the United States. At this initial pleading stage, BNT-US has adequately alleged that the Government distributed Plaintiff's copyrighted works, without permission, during United States military operations abroad. *Amd. Cmpl, ¶¶ 39-48*. Once discovery is conducted to determine what persons within the Government and within government contractor organizations participated in, authorized or directed these acts of infringement, the court will be in a position to determine whether the infringement claim "arose" in a foreign country or in the United States. These questions are not jurisdictional in nature, however. This portion of the Government's Motion is premised upon a misunderstanding of "the often-confused boundary between elements of a federal claim, which must be established before relief may be granted, and the requirements for establishing subject matter jurisdiction." *Litecubes, L.L.C. v. N. Light Prods.*, 523 F.3d 1353, 1357 (Fed. Cir. 2008). While Plaintiff will have to prove that allegedly infringing activity took place in the United States to prevail on claims of copyright infringement, as with any other element of a claim, failure ultimately to do so does not divest the federal courts of subject matter jurisdiction over the action. *Litecubes*, 523 F.3d at 1357.

Subject matter jurisdiction will exist where a well-pleaded complaint establishes that federal copyright law creates a cause of action, or that the plaintiffs' right to relief necessarily depends on resolution of a substantial question of federal copyright law. *Litecubes,* 523 F.3d at 1360. Plaintiff properly pled every element of a copyright infringement claim, alleging in Count II of its Amended Complaint that the Government infringed BNT-Denmark's copyright by "transfer of the Software to ROK and Jordanian armed forces… without permission of the owner of the copyrights of the material in the Software's code, instruction manuals, screen display,

16

maps, visuals, artwork, or other original work of authorship fixed in the Software" "in contradiction of BNT-Denmark's exclusive right to determine whether and when to copy these works…and its exclusive right to determine whether and when to distribute these works," thereby causing Plaintiff to suffer damage. *Amd. Cmpl, ¶ 70, 72, 75.*

Subject matter jurisdiction does not fail simply because Plaintiff might be unable to ultimately succeed on the merits. *Steel Co. Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) (quoting *Bell v. Hood*, 327 U.S. 678, 682, 66 S. Ct. 773, 90 L. Ed. 939 (1946)); *Litecubes,* 523 F.3d at 1360-61.  A failure to prove the allegations alleged in a complaint requires a decision on the merits, not dismissal for lack of subject matter jurisdiction. *Litecubes,* 523 F.3d at 1361.  As the Supreme Court stated in *Arbaugh v. Y & H Corp., 54*6 U.S. 500, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006), there are important consequences of labeling a requirement as a "determinant of subject-matter jurisdiction, rather than an element of [the plaintiff's] claim for relief," and cautioned that courts have, at times, erroneously called a limitation jurisdictional that was actually simply an element of the claim. *Id.* at 511, 514, 126 S. Ct. 1235, 163 L. Ed. 2d 1097.  The Supreme Court articulated a "readily administrable bright line rule" that, unless Congress expressly states that a threshold limitation on a statute's scope will be jurisdictional, courts should treat such restriction as non-jurisdictional.  *Id.* at 516, 126 S. Ct. 1235, 163 L. Ed. 2d 1097.

Congress did not establish, as a threshold requirement in the statute, that an act of copyright infringement must happen within the United States to be covered by U.S. copyright law.  Although a federal court in *Subafilms, Ltd. v. Mgm-Pathe Communs. Co.*, 24 F.3d 1088, 1098 (9th Cir. 1994), among others, have interpreted the Copyright Act not to reach acts of infringement that take place entirely abroad, the bright-line rule articulated by the Supreme Court

17

clearly mandates that any requirement that an allegedly infringing act occur within the United States be treated as non-jurisdictional, absent a clear provision within the statute to the contrary. *Litecubes,* 523 F.3d at 1363, 1367, *citing Arbaugh,* 546 U.S. at 516.[9]  Whether the alleged infringer's actions are within an extraterritorial limitation should be treated as an element of the claim, and not a predicate to subject matter jurisdiction, as Congress did not clearly provide in the Copyright Act that there is a jurisdictional extraterritorial limitation.  *Id.*

The Government provides citation to *Leonardo v. United States*, 55 Fed. Cl. 344 (2003) for a proposition that 28 U.S.C. § 1498(c) forecloses jurisdiction for claims originating outside of the United States, *Motion, p. 16,* but the *Leonardo* decision was handed down prior to the Supreme Court's clarification of the boundary between subject matter jurisdiction and elements of the claim in *Arbaugh*, and prior to the Federal Circuit's suggestion in *Litecubes* that this confusion between subject matter jurisdiction and elements of a claim has extended to the issue of the extraterritorial scope of a statute. *Litecubes,* 523 F.3d at 1368.  Since the Supreme Court's *Arbaugh* decision in 2006, District Courts in the Second, Third, Fifth, Sixth, Eighth, Ninth, and Tenth Circuits have followed the bright line rule articulated in *Arbaugh*, which was explained by the Federal Circuit in *Litecubes*, holding that whether an act of infringement occurred in the United States is an element of the claim to be proven on the merits, not a prerequisite for subject

---

[9] As noted in *Litecubes,* the Supreme Court in *Arbaugh* pointed to its earlier decision in *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 111 S. Ct. 1227, 113 L. Ed. 2d 274 (1991), in which it had characterized the extraterritorial effect of Title VII as jurisdictional, as an example of a "drive by jurisdictional ruling[]" in which it had been "less than meticulous" in distinguishing between subject matter jurisdiction and an ingredient of a claim for relief. *Arbaugh*, 546 U.S. at 511, 126 S. Ct. 1235, 163 L. Ed. 2d 1097.  The Court explained that such cases "should be accorded 'no precedential effect' on the question of whether the federal court had the authority to adjudicate the claim in suit." *Id.* This strongly suggests that limitations on the extraterritorial reach of statutes are subject to *Arbaugh's* general rule, that they should be considered elements of the claim unless Congress has clearly labeled the limitation jurisdictional in the statute. *Litecubes,* 523 F.3d at 1365; *citing Arbaugh*, 546 U.S. at 511, 126 S. Ct. 1235, 163 L. Ed. 2d 1097.

matter jurisdiction. *Shropshire v. Canning*, 809 F. Supp. 2d 1139 (N.D. Cal. 2011); *Wood v. Houghton Mifflin Harcourt Publ. Co.*, 569 F. Supp. 2d 1135 (D. Colo. 2008); *Estate of William A. Stewart v. Sugar Hill Music Publ.*, No. 10 Civ. 2632 (LTS)(JLC), 2012 U.S. Dist. LEXIS 141609 (S.D.N.Y. Sept. 28, 2012); *Astrazeneca Pharms. LP v. Aurobindo Pharma Ltd. (In re Rosuvastatin Calcium Patent Litig.)*, 2009 U.S. Dist. LEXIS 15063 (D. Del. Feb. 25, 2009); *Taylor v. Ocwen Loan Servicing, LLC*, 2012 U.S. Dist. LEXIS 165793 (S.D. Tex. Nov. 20, 2012); *Federal-Mogul World Wide, Inc. v. Mahle GmbH*, 2012 U.S. Dist. LEXIS 27280 ( E.D. Mich. Mar. 1, 2012); *M-I Drilling Fluids UK Ltd. v. Dynamic Air Inc.*, 99 F. Supp. 3d 969 (D. Minn. 2015).  Since the question of whether the actions of the Government and its contractors were entirely extraterritorial is an issue of fact, dismissal of Count II on preliminary motion would be inappropriate.  Where jurisdictional facts are intertwined with the facts central to the merits of the dispute, a trial court should afford the plaintiff the procedural safeguards – such as discovery – that would apply were the plaintiff facing a direct attack on the merits.  *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009).

Even if *Arbaugh*, *Litecubes*, and their progeny did not dispose of the issue, dismissal of Count II would not be appropriate under the facts at bar, because the principle of extraterritorial application of the Copyright Act articulated in *Subafilms* applies only to acts of infringement "that take place entirely abroad."[10]  In the present case, the Government essentially argues that

---

[10] The *Subafilms* court, and other District Courts that have followed the principal articulated in that case, hold only that Copyright Act infringement actions are unavailable when the infringement takes place <u>entirely</u> abroad, but even these courts have struggled with circumstances in which an infringing act was authorized or directed by persons within the United States and completed overseas.  Infringement claims have been allowed to proceed when infringement occurring outside the United States was permitted or initiated by predicate acts of infringement within the United States. *Rundquist,* 798 F. Supp. 2d at 123*; Armstrong v. Virgin Records*, 91 F. Supp. 628, 634 (S.D.N.Y. 2000).  In addition, a U.S. court may hold a U.S. defendant vicariously liable for infringement under U.S. copyright law, if the defendant had the

U.S. copyright law should provide a copyright holder no protection when the Government deploys equipment containing copyrighted software at overseas military installations or during overseas deployments.  This proposition, if accepted, would have wide-ranging adverse effects across an untold number of government contracts and software licenses entered into between the Government and its contractors.  *Subafilms* and its progeny cannot reasonably be interpreted to permit the Government to commit copyright infringement outside of the United States, during the course of U.S. military operations, to avoid responsibility for such infringement when the Government distributes copyrighted software that it is contractually obligated to protect from foreign distribution.

    C.  Plaintiff's copyright claim is not time-barred.

The Government argues that Plaintiff's copyright claim is time-barred, pointing to 28 U.S.C. § 1498(b), which provides, in part, that "[e]xcept as otherwise provided by law, no recovery shall be had for any infringement of a copyright covered by this subsection committed more than three years prior to the filing of the complaint or counterclaim for infringement in the action…"  This is similar to 17 U.S.C. § 507(b), which applies to copyright against persons and entities other that the Government, and provides: "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."  In interpreting § 507(b), nine circuit courts of appeal have adopted the discovery rule, and hold that a claim for copyright infringement accrues when one has knowledge of a violation or is chargeable with such knowledge.  *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 796 (2001); *Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199, 202 (4th Cir.

---

right and ability to supervise the infringing activity, and a direct financial interest in such activities. *Rundquist*, 798 F. Supp. 2d at 126-27; *MOB Music Publ'g v. Zanzibar on the Waterfront, LLC*, 698 F. Supp. 2d 197, 206 (D.D.C. 2010).

1997); *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994) 6 W. Paltry, Copyright § 20:19, pp. 20-28 (2013). Plaintiff was not aware, and could not reasonably have known, of the Government's distribution of the Software to ROK armed forces until early March 2013, as stated in the Rohrback Declaration that is an exhibit to the original Complaint (and adopted in the Amended Complaint). The certified claim was submitted to the Government on August 31, 2015, and this claim was denied by the government on January 8, 2016.[11]

> The statute provides for the tolling of the limitations period during:

> …the period between the date of receipt of the written claim for compensation by the Department or agency of the Government…and the date of mailing by the government of a notice to the claimant that his claim has been denied shall not be counted as part of the three years, unless suit is brought before the last-mentioned date.

*28 U.S.C. § 1498(b)*. When a plaintiff submits a copyright claim to the Government, and the Government thereafter denies this claim, "the three-year limitations period of [the] lawsuit would be delayed by the amount of time between his claim to the [Government] and the "Government's] denial." *Wechberg v. United States*, 54 Fed. Cl. 158, 163 (2002). The period between August 31, 2015 and January 8, 2016 constitutes a tolling period of 130 days. Adding 130 days to the earliest possible end date of what otherwise would have been the three-year

---

[11] Copies of certified mail receipts recording delivery of the certified claim to the Contracting Officer on August 31, 2015 are attached hereto as Exhibit J. *Decl. of B. Windesheim, ¶ 9.* A copy of the Contracting Officer's decision is attached to the original Complaint as Exhibit E, and adopted in the Amended Complaint.

limitations period (on March 1, 2016),[12] yields a limitations period that extends at least through

July 11, 2016[13] for claims arising from distribution of the software to ROK armed forces.[14]

This court has declined to apply the "continuing wrong" doctrine to copyright

infringement under § 1498(b), *Cohen v. United States*, 94 Fed. Cl. 165, 173 (2010); *Wechberg*,

54 Fed. Cl. at 161, and therefore recovery under Count II is limited to those acts of infringement

that occurred on and after August 31, 2012 (three years before submission of the certified claim),

*Cohen*, 94 Fed. Cl. at 172.  Nevertheless, the copyright claim asserted in Count II is not time-

barred, and BNT-US may recover damages for infringements that took place at any time on and

after August 31, 2012.[15]

### V.   Plaintiff has properly pled, as an alternative count, a claim for misappropriation of its trade secrets.

Claims for copyright infringement and misappropriation of trade secrets may be pled in

the same action, based on the same conduct, because the tort action for misappropriation of trade

secrets incorporates elements beyond those necessary to prove copyright infringement, and

regulate conduct qualitatively different from the conduct governed by copyright law.

*Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 229 (4th Cir. 1993); *Trandes Corp. v. Guy F.*

---

[12] The Rohrback declaration, attached to the original Complaint as Exhibit F and adopted in the Amended Complaint, recites that Plaintiff first learned of the infringement "during the first half of March, 2013." *Rohrback Decl,* ¶ 2.

[13] The 130th day following March 1, 2016 (July 9, 2016) falls on a weekend.  July 11 is the following Monday.

[14] The limitations period for claims arising from distribution of the software to Jordan would extend to September 28, 2016, since the Rohrback declaration states that Plaintiff first learned of distribution of the Software on May 21, 2013.  *Rohrback Decl,* ¶ 5.  An addition of 130 days to May 21, 2016 yields a termination of the "Jordan" limitations period on September 28, 2016.

[15] The Government does not challenge the timeliness of Plaintiff's breach of contract/license claim stated in Count I.  The time periods within which a contract claim must be asserted against the Government, and within which suit must be filed if the Government denies such claim, are greater than the limitations period applicable to Plaintiff's copyright claim.  *41 U.S.C. § 7103(a)(4)(A).*

*Atkinson Company*, 996 F.2d 655, 659 (4th Cir. 1993); Harper *& Row Publishers, Inc. v. Nation*

*Enterprises*, 723 F.2d 195, 200-01 (2nd Cir. 1983). This is referred to as the "extra element" test.

*Trandes*, 996 F.2d at 659; *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 795 F. Supp. 487

(D. Mass. 1992); *Firoozye v. Earthlink Network*, 153 F.Supp.2d 1115, 1125 (N.D. Cal. 2001).

The breach of a duty of trust or confidentiality comprises the core of actions for trade secret

misappropriation, and supplies an extra element that qualitatively distinguishes trade secret

causes of action from claims for copyright infringement that are based solely on copying, and

therefore state law actions for trade secret misappropriation are not pre-empted by federal

copyright infringement claims. *Trandes*, 996 F.2d at 659; *Computer Assocs. Int'l, Inc. v. Altai,*

*Inc.*, 982 F.2d 693, 717 (2nd Cir. 1992); *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1090 n.13

(9th Cir. 1989); *Firoozye*, 153 F.Supp.2d at 1130.

  The Government does not appear to dispute that trade secret claims are separately

cognizable from copyright claims, but challenges whether this court has jurisdiction to adjudicate

such a tort claim. *Motion, p. 19*. Plaintiff acknowledges that Count III is an alternative count,

upon which recovery may only be had if the contract claim stated in Count I is denied or

dismissed. Under the Federal Tort Claims Act ("FTCA"), the Government is liable for torts,

using state law to define those torts, *28 U.S.C. § 2674*, and the District Courts have jurisdiction

to adjudicate FTCA claims brought under § 2674, *28 U.S.C. § 1346(b)(1)*. The jurisdictional

statute of the U.S. Court of Federal Claims does not explicitly override the commitment of tort

jurisdiction to the District Courts. *28 U.S.C. § 1491*. As discussed by the court in *United States*

*Marine, Inc. v. United States*, 722 F.3d 1360, 1367-69 (Fed. Cir. 2013), however, enactment of

the Tucker Act could be interpreted to provide this court with concurrent or exclusive

jurisdiction over particular tort claims, under limited circumstances. "When...statutes involve

waiver of sovereign immunity, a court deciding where a particular claim may or must be litigated must consider the policies behind the several potentially applicable waivers." *U. S. Marine,* 722 F.3d at 1368.

In some circumstances, a party's tort claim in District Court may be so rooted in a contract-breach claim that its adjudication outside of the Tucker Act's grant of jurisdiction would be an unjustified incursion on the presumptive commitment of contract matters to the U.S. Court of Federal Claims. *Id.* In such cases, liability under the FTCA is displaced by the contract claim, because a FTCA action cannot be heard in the Claims Court. *Id.* Under *Woodbury v. United States* and its progeny, therefore, where an "action is essentially for breach of a contractual undertaking, and the liability, if any, depends wholly upon the government's alleged promise, the action must be brought under the Tucker Act, and cannot be under the FTCA. *Woodbury v. United States*, 313 F.2d 291, 296 (9th Cir. 1963). In cases where the plaintiff asserts the kind of privity of contract with the Government that readily permits litigation of the issues of contract breach, injury, and damages under the Tucker Act, adjudicating those issues in the Claims Court without an additional tort claim under the FTCA leaves the plaintiff with a cause of action that permits recovery of compensation for contract-related harm caused by the Government. *U. S. Marine,* 722 F.3d at 1370. While a tort claim under the FTCA cannot be adjudicated in the Claims Court (because § 1346(b)(1) gives the District Court exclusive jurisdiction over such claims), there is still the possibility of recognizing non-FTCA tort claims that are founded upon an express or implied contract of the Government. *U. S. Marine,* 722 F.3d at 1371. While Plaintiff recognizes that there is substantial authority for the proposition that the Claims Court lacks jurisdiction over tort claims against the Government, *see Keene Corp. v. United States*, 508 U.S. 200, 214, 113 S. Ct. 2035, 124 L. Ed. 2d 118 (1993), as a matter of

alternative pleading Plaintiff argues that a non-FTCA claim against the government for misappropriation of trade secrets would be cognizable in this court, in the unlikely event that Count I were dismissed or defeated.  Alternatively, if Count I were dismissed, the trade secrete misappropriation action set forth in Count III could be transferred to the District Court for adjudication.

## VI.   Conclusion

For the foregoing reasons, the court should deny the Defendants' Motion to Dismiss BNT-US's First Amended Complaint.

                                             Respectfully submitted,

                                             /s/ Steven J. Lewicky
September 20, 2016                            _____
                                             Steven J. Lewicky, Esq.
                                             Davis, Agnor, Rapaport & Skalny, LLC
                                             10211 Wincopin Circle, Suite 600
                                             Columbia, Maryland 21044
                                             (410) 995-5800 (Telephone)
                                             (410) 309-6161 (Facsimile)
                                             slewicky@darslaw.com
                                             Lead Attorney for Plaintiff