# In the United States Court of Federal Claims

No. 16-783C
Filed: December 2, 2016
Issued for Publication: December 19, 2016.[1]

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * | * |
| BRUHN NEWTECH, INC., | * |
| Plaintiff, | * Motion to Dismiss; Subject Matter |
| | * Jurisdiction; Failure to State a Claim; |
| v. | * Breach of Contract; Copyright |
| | * Infringement; Uniform Trade Secrets |
| UNITED STATES, | * Act; 28 U.S.C. § 1498(b); 17 U.S.C. |
| | * § 501. |
| Defendant. | * |
| * * * * * * * * * * * * * * * * * * | * |

**Steven J. Lewicky**, Davis, Agnor, Rapaport & Skalny, LLC, Ellicott City, MD, for plaintiff. With him were **Meagan O'Connor**, Davis, Agnor, Rapaport & Skalny, Columbia, MD, and **Janine S. Benton**, Benton Potter & Murdock, P.C, Falls Church, VA.

**Scott D. Bolden**, Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., for defendant. With him were **John Fargo**, Director, Commercial Litigation Branch, and **Benjamin C. Mizer**, Principal Deputy Assistant Attorney General, Civil Division, Department of Justice, Washington, D.C.

## O P I N I O N

**HORN, J.**

### FINDINGS OF FACT

Plaintiff, Bruhn NewTech, Inc. (BNT-US), filed the current complaint in the United States Court of Federal Claims asserting claims of breach of contract, copyright infringement, and violation of the Uniform Trade Secrets Act against the United States Marine Corps.[2] In the current complaint before this court, plaintiff asserts that, pursuant

---

[1] This opinion was issued under seal on December 2, 2016. The court afforded the parties an opportunity to propose redactions in the published opinion and the parties did not seek any redactions. The opinion is issued in full below.

[2] Plaintiff previously filed a similar action in this court, which plaintiff voluntarily moved to dismiss, without prejudice, pursuant to Rule 41(a) of the Rules of the United States Court of Federal Claims (RCFC) (2016). Bruhn NewTech, Inc. v. United States, No. 16-92 (Fed. Cl. June 20, 2016).

to the Contract Disputes Act, 41 U.S.C. § 609 (2012), it submitted a breach of contract claim to the contracting officer on August 31, 2015, which was denied on January 8, 2016, and which decision plaintiff now seeks this court to review.

According to the complaint, plaintiff, BNT-US, is "a Delaware corporation" that is "a wholly owned subsidiary of Bruhn NewTech A/S ('BNT-Denmark'), a Danish corporation." Plaintiff asserts that both BNT-US and BNT-Denmark "are in the business of marketing and selling commercial computer software created by BNT-Denmark."[3] The commercial computer software "is sold worldwide and is utilized in military systems that track and analyze chemical, biological, radiological and nuclear agents ('CBRN') in battlefield or civilian environments."

On May 13, 1998, defendant awarded plaintiff a contract for commercial software, which was identified as contract number M67854-98-C-2076 (the contract). Under the contract, defendant purchased Bruhn NewTech's NBC (Nuclear, Biological, and Chemical) Analysis software. The contract was intended to support the development of phase one of the Joint Warning and Reporting Network (JWARN). According to defendant, the Department of Defense has deployed the JWARN since 1998, and described it as "a collection of computer programs used to track and analyze chemical, biological, radiological and nuclear agents." The "purchase description" for the contract stated that the JWARN phase one commercial software consisted of the Bruhn NewTech NBC Analysis software. The contract's Statement of Work stated that the JWARN was intended to "provide uniform integration and analysis of Nuclear, Biological, and Chemical (NBC) detection information" on the battlefield and to "automate NBC warning and reporting for the Army, Navy, Air Force, and Marine Corps."[4] The contract called for the delivery of "NBC Analysis Software," and included additional contract line items for "Training Material," a "Contractor Training Course," "Commercial Software Manual," and "Software Upgrade and Maintenance." The Statement of Work explained that the tasks to be performed by plaintiff included "the delivery of the NBC analysis (NBCA) software packages, software maintenance and upgrades, contractor support, and training." Plaintiff asserts that, during the life of the contract, "the NBC Analysis software was re-designated as 'CBRN-ANALYSIS' software." In its complaint, plaintiff explains that the term "Software" used throughout the complaint "refers to the subject software licensed by Plaintiff to Defendant under the Contract, regardless of whether designated as NBC Analysis software or CBRN-Analysis software."

---

[3] BNT-Denmark is not a party to this litigation.

[4] According to plaintiff, the JWARN program is managed by the "Joint Program Manager – Information Systems ('JPMIS')," within the Department of Defense, which plaintiff alleges is staffed "by a combination of uniformed military and civilian government employees, along with outside Systems Engineering and Technical Assistance (SETA) contractors."

In its complaint, plaintiff states that the software it delivered to defendant under the 1998 contract is "the primary product of BNT-Denmark," and that BNT-Denmark is "the proprietor of registered copyrights in the United States on the computer source code within the Software." Plaintiff explains in its complaint that BNT-Denmark has authorized "Plaintiff to market and sell Software licenses to countries and government organizations outside of Europe" for many years. Plaintiff states that the software source code that was delivered under the contract finished development in 1998, and it was first published in January 1999. Plaintiff asserts that, after January 1999, "BNT-Denmark . . . made refinements and improvements to the code, updating the Software at least once per year for its customers." According to plaintiff, in 2014, BNT-Denmark completed copyright registration for the software code as it existed in January 1999, U.S. Copyright Reg. No. TX0007836500, and for the software code that was updated and improved after January 1999, U.S. Copyright Reg. No. TX0007836490. The Copyright Registration Certificate for Registration Number TX0007836500, the software code as it existed in 1998, identifies the "Title of Work" as "NBC Analysis – CRID 0040," and the "Year of Completion" as 1998. Separately, the Copyright Registration Certificate for Registration Number TX007836490, the software as it existed after 1999, identifies the "Title of Work" as "NBC Analysis JWARN 1F Phase 2, CRID 1489, 1490, 1491" and indicates the "Year of Completion" as 2008. The author and copyright claimant of both registered copyrights is listed as "Bruhn NewTech A/S," "Citizen of: Denmark." According to plaintiff, as a result of the copyright registration, "the Software as it existed on the date of the Contract is the subject of a US copyright registration, as are all updates and improvements made to the Software after that time and through the date of the relevant acts of breach and infringement."

The 1998 contract incorporated Federal Acquisition Regulation (FAR) clause 52.227-19, "Commercial Computer Software—Restricted Rights," and contained a commercial computer software license agreement (the software license agreement). Plaintiff asserts that the software license agreement granted defendant a "commercial, restricted, national license to use the Software." According to the software license agreement, "[a]ll software to be delivered under this contract including source codes, is commercial computer software subject to restricted rights specified in FAR 52.227-19." Additionally, the software license agreement provided:

> The Government may make an unlimited number of copies of the software and may distribute and use the software in any computers owned or leased by the Government and operated by the U.S. Government personnel working for U.S. Government departments, organizations and agencies.

The software license agreement, however, also stated:

> The Government shall not disclose the software and shall not give, sell, license or otherwise provide copies of the software or use of the software to any third party person or entity including but not limited to members of the public, governments of foreign countries, or international agencies or organizations.

3

In addition to the software license agreement, plaintiff alleges that it placed the following legend on copies of the software that it provided to defendant:

> COMMERCIAL COMPUTER SOFTWARE
>
> RESTRICTED RIGHTS
>
> Notwithstanding any other lease or license agreement that may pertain to, or accompany the delivery of, this computer software, the rights of the Government regarding its use, reproduction and disclosure are as set forth in Government Contract No. M67854-98-C-2076.

The parties do not dispute that, after the contract was awarded in 1998, plaintiff delivered the NBC Analysis software to defendant as required under the contract. According to plaintiff, the JWARN program has deployed plaintiff's software since 1998, when it was delivered under the contract. Plaintiff asserts that the

> [s]oftware has been used continuously by Defendant since the date of Contract award to integrate CBRN data, sensor alert information, and observation reports from battlefield or civilian environments, and to generate plots of the hazard area and warning messages to military units or civilian authorities to warn of CBRN hazards.

Plaintiff explains that the software was upgraded and updated over time and that "[t]hese updates were delivered to the United States Government pursuant to a series of contracts dated after the Contract, by which the United States Government obtained updates or upgrades to specific functionality within the Software, without fundamentally changing the original software." Plaintiff contends that, for each of these "subsequent contracts," defendant "acknowledged and affirmed its ongoing obligations under the Contract and the incorporated Software License."[5] Defendant asserts that plaintiff's 1998 contract with the United States closed on June 3, 2004. According to defendant, the Department of Defense initiated JWARN Block 1F Signal Fire (JWARN Block 1F), a later phase of JWARN, several years after plaintiff's contract expired in 2004.

Plaintiff alleges that in 2013 its software was being used by defendant in "the Korean theater of United States military operations" as part of an ongoing effort known as "JWARN Block 1F Signal Fire." Plaintiff alleges that, "in or before March 2013," defendant breached the software license agreement contained in the 1998 contract by transferring

---

[5] As discussed further below, although plaintiff acknowledges other contracts between BNT-US and the government related to the software, plaintiff asserts that the complaint pertains only to the 1998 contract. Furthermore, even though plaintiff argues that there was no second version of the software, and that, after 1998, plaintiff only provided updates to the software delivered in 1998, defendant argues that plaintiff delivered different software to the government under at least two different contracts, the 1998 contract and at least one contract subsequent to the expiration of the 1998 contract in 2004.

4

the software delivered under the contract to the armed forces of the Republic of Korea (South Korea) and the Kingdom of Jordan (Jordan). Plaintiff asserts that, in March 2013, it learned that defendant authorized the transfer of the software "onto several computer hard drives that were designated to be delivered to the Republic of Korea ('ROK' or 'South Korea') armed forces within laptop computers that would be operated by South Korean forces without oversight or monitoring by DoD [Department of Defense]." Plaintiff argues that individuals authorized by defendant were responsible for loading the software onto the computers intended for South Korea, and that the responsible individuals "had knowledge of the terms of the Software License." Similarly, plaintiff asserts in its complaint that "[i]n or about May 2013, Plaintiff also became aware that DoD had provided copies of the Software to the air force of the Kingdom of Jordan, in breach of the Software License."

Plaintiff asserts that it has never authorized defendant to distribute the software to the South Korean or Jordanian government, agencies, or armed forces, and the software license has never been modified to allow for such distribution. According to plaintiff, the versions of the software that were transferred to South Korea and the Kingdom of Jordan "in or before March 2013 incorporated not only the software code as it existed when first published in January 1999," but also "software code updating and upgrading the original code." As explained above, plaintiff asserts in its complaint that the software delivered under the 1998 contract was upgraded and updated over time and that "[t]hese updates were delivered to the United States Government pursuant to a series of contracts dated after the Contract."

After discovering that defendant had transferred the software to the armed forces of South Korea and Jordan, plaintiff submitted a certified claim to the contracting officer asserting a breach of the software license agreement and seeking to recover $21,752,227.00 and reasonable attorneys' fees. Plaintiff specifically stated that the certified claim was submitted under contract number M67854-98-C-2076, the 1998 contract. Plaintiff alleges in the complaint that the "certified claim submitted to the Contracting Officer was for breach, by the government, of a software license that was contained within the Contract, by the unauthorized publication and distribution of software code that BNT-US delivered to the government pursuant to the Contract." In the certified claim, BNT-US alleged:

> The Department of Defense . . . breached the Contract's Software License by allowing the provision of no less than seven laptop computers containing BNT software to the armed forces of the Republic of Korea without adequate protection against copying or software piracy, and by providing an unknown number of copies of the software to the Jordanian Air Force.

Plaintiff also asserted claims of copyright infringement and trade secret violations in its certified claim. The contracting officer issued a decision denying BNT-US's certified claim on January 8, 2016.

Following the contracting officer's decision, plaintiff filed a complaint in this court, which seeks review of the contracting officer's January 8, 2016 decision denying plaintiff's

5

claim under the contract. Plaintiff alleges that defendant, both on its own and through contractors, breached the software license agreement contained in the 1998 contract when it provided unprotected copies of plaintiff's software to South Korean and Jordanian armed forces. Plaintiff asserts that "[t]he ROK [Republic of Korea] and Jordan thereby received benefits associated with a national license of the Software, without the burden of complying with terms of a national license, and without providing any compensation to Plaintiff." According to plaintiff, "[t]he Software License granted to the USMC [defendant] was unlimited and perpetual, as were the restrictions stated in the license terms prohibiting the government from giving, selling, licensing or otherwise providing copies of the Software to any third party or to governments of foreign countries." In addition to its breach of contract claim, plaintiff alleges that the transfer of the software to the armed forces in South Korea and Jordan without the permission of the owner of the copyrighted material, BNT-Denmark, was a violation of the United States Copyright Act, codified at 17 U.S.C. § 102 et seq. (2012). Finally, plaintiff alleges that defendant violated the Uniform Trade Secrets Act "[b]y distributing the Software to third parties without the permission of Plaintiff," and thereby improperly disclosing "the trade secrets of Plaintiff without the consent of Plaintiff." Plaintiff seeks damages in the amount of $21,752,227.00 as well as reasonable attorneys' fees, or, in the alternative, damages in the amount of the unjust enrichment to defendant or a reasonable royalty and exemplary damages.

In response to plaintiff's complaint, defendant filed a motion to dismiss each of the causes of action alleged in the complaint for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) or for failure to state a claim upon which relief may be granted under RCFC 12(b)(6).

## DISCUSSION

**Plaintiff's Breach of Contract Claim**

The statute at 28 U.S.C. § 1491 (2012), known as the Tucker Act, grants jurisdiction to this court as follows:

> (a)(1) The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. . . .

28 U.S.C. § 1491(a)(1). The Tucker Act, at 28 U.S.C. § 1491(a)(2), also states:

> In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just. The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 7104(b)(1) of title 41, including a dispute concerning termination of a contract, rights in tangible

6

or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act.

28 U.S.C. § 1491(a)(2). As interpreted by the United States Supreme Court, this Act waives sovereign immunity to allow jurisdiction over claims (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289–90 (2009); United States v. Testan, 424 U.S. 392, 400 (1976); United States v. Mitchell, 463 U.S. 206, 216 (1983); see also Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999); Stinson, Lyons & Bustamante, P.A. v. United States, 33 Fed. Cl. 474, 478 (1995), aff'd, 79 F.3d 136 (Fed. Cir. 1996).

Section 1491(a)(2) of the Tucker Act provides this court with broad jurisdiction over issues that arise under the Contract Disputes Act (CDA), including "any claim by or against, or dispute with a contractor arising under section 7104(b)(1) of title 41, including a dispute concerning termination of a contract . . . ." 28 U.S.C. § 1491(a)(2); see also Todd Constr., L.P. v. United States, 656 F.3d 1306, 1311 (Fed. Cir. 2011). By its terms, the CDA gives this court jurisdiction to hear claims relating to "any express or implied contract . . . made by an executive agency for-- . . . (1) the procurement of property, other than real property in being; [and] (2) the procurement of services[.]" 41 U.S.C. § 7102 (2012) (brackets added); see also 41 U.S.C. § 7104(b); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1344-45 (Fed. Cir. 2008); North Star Steel Co. v. United States, 477 F.3d 1324, 1331 (Fed. Cir. 2007). The Federal Circuit has explained that "Congress's decision to limit the applicability of the [CDA's] procedures to those claims 'relating to' a contract indicates that the claim at issue must have some relationship to the terms or performance of a government contract." Applied Cos. v. United States, 144 F.3d 1470, 1478 (Fed. Cir. 1998).

Before this court can exercise jurisdiction pursuant to the CDA, however, the CDA requires that a contractor's claim first must be submitted in writing to the contracting officer, and the contracting officer must render a final decision on the claim. See 41 U.S.C. § 7103(a)(1) (2012). The CDA does not define "claim," but the United States Court of Appeals for the Federal Circuit has explained that "the definition of the term 'claim' in the FAR governs." Todd Constr., L.P. v. United States, 656 F.3d at 1312; see also H.L. Smith, Inc. v. Dalton, 49 F.3d 1563, 1564 (Fed. Cir. 1995) (explaining that the Federal Circuit "has identified three requirements for a valid CDA claim: (1) the contractor must submit the demand in writing to the contracting officer, (2) the contractor must submit the demand as a matter of right, and (3) the demand must include a sum certain"). Therefore, courts look to the FAR, which defines "claim" as a "written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 2.101 ("Definitions") (2016); see also Todd Constr., L.P. v. United States, 656 F.3d at 1312 (explaining that the court should read the

7

definition of "claim" broadly). As this language indicates, a CDA claim can seek monetary or non-monetary relief. See Todd Constr., L.P. v. United States, 656 F.3d at 1311.

The United States Court of Appeals for the Federal Circuit has explained that "the phrase 'as a matter of right' in the FAR's definition of a 'claim' requires only that the contractor specifically assert entitlement to the relief sought. That is, the claim must be a demand for something due or believed to be due . . . ." Alliant Techsystems, Inc. v. United States, 178 F.3d 1260, 1265 (Fed. Cir.), reh'g denied, 186 F.3d 1379 (Fed. Cir. 1999); see also Todd Constr., L.P. v. United States, 656 F.3d at 1311 ("The Tucker Act provides the Claims Court with jurisdiction over 'any claim by or against, or dispute with, a contractor arising under [the CDA], including . . . non-monetary disputes on which a decision of the contracting officer has been issued under section 6 of [the CDA].'") (brackets in original). The content, not the form, determines what is sought in the claim; no magic language is required. See Placeway Constr. Corp. v. United States, 920 F.2d 903, 908 (Fed. Cir. 1990) ("In fact, this court de-emphasized the importance of the form in which claims are submitted, stating, 'We know of no requirement in the Disputes Act that a "claim" must be submitted in a particular form or use any particular wording.'" (quoting Contract Cleaning Maint., Inc. v. United States, 811 F.2d 586, 592 (Fed. Cir. 1987))); CW Gov't Travel, Inc. v. United States, 63 Fed. Cl. 369, 382–83 (2004) ("The CDA does not require 'that a "claim" . . . use any particular wording. All that is required is that the contractor submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis . . . of the claim.'" (quoting Contract Cleaning Maint., Inc. v. United States, 811 F.2d at 592)). In CW Government Travel, Inc. v. United States, the court indicated, "[t]he Federal Circuit 'has definitively stated that certain "magic words" need not be used [to establish a claim under the CDA;] . . . [rather,] the intent of the "claim" governs.'" Id. at 383 (quoting Transamerica Ins. Corp. v. United States, 973 F.2d 1572, 1578 (Fed. Cir. 1992), overruled on other grounds by Reflectone, Inc. v. Dalton, 60 F.3d 1572) (Fed. Cir.), reh'g denied (Fed. Cir. 1995))) (brackets and omissions in CW Gov't Travel, Inc. v. United States).

In addition to submitting a valid claim to a contracting officer, a "prerequisite for jurisdiction of the Court of Federal Claims over a CDA claim is a final decision by a contracting officer." Northrop Grumman Comp. Sys. v. United States, 709 F.3d 1107, 1111 (Fed. Cir. 2013). For this court to exercise jurisdiction over a CDA claim, "the contractor must have received the contracting officer's final decision on that claim." M. Maropakis Carpentry, Inc. v. United States, 609 F.3d 1323, 1328 (Fed. Cir. 2010); see also James M. Ellet Constr. Co., Inc. v. United States, 93 F.3d 1537, 1542 (Fed. Cir. 1996). When a contracting officer has not issued a final decision on a contractor's claim, the Court of Federal Claims lacks subject matter jurisdiction to consider the claim. See England v. The Swanson Grp., Inc., 353 F.3d 1375, 1379 (Fed. Cir. 2004); see also Tidewater Contractors, Inc. v. United States, 107 Fed. Cl. 779, 784 (2012); Deponte Investments, Inc. v. United States, 54 Fed. Cl. 112, 115 (2002). If, however, within sixty days of submitting a claim, the contracting officer has not issued a final decision or notified the contractor of a reasonable time in which a final decision will be issued, the claim may be deemed denied for purposes of appeal or judicial review. See 41 U.S.C. § 7103(f). As previously stated, after the CDA prerequisites discussed above are satisfied, this court

can exercise jurisdiction over a claim brought pursuant to the CDA and award monetary and/or non-monetary relief, when appropriate.

In arguing that plaintiff's breach of contract claim should be dismissed for lack of subject matter jurisdiction and for failure to properly state a claim for relief, defendant asserts that plaintiff's complaint refers to two different versions of software, a 1998 version and a 2008 version, which, according to defendant, were delivered under different contracts. Defendant argues that plaintiff's complaint plausibly can be read only to assert a breach of contract related to the 2008 software version, which would have been delivered to the government after the 1998 contract expired in 2004. Defendant argues that, to the extent the complaint alleges a breach of contract "with respect to software that was created **four years after** the expiration of the [1998] contract at issue," that breach of contract claim is jurisdictionally deficient because that claim has not been presented to a contracting officer. (emphasis in original). As noted above and discussed further below, plaintiff disputes defendant's allegation that there are two software versions delivered under separate contracts.

To support its position that the complaint involves two software versions delivered under different contracts, defendant relies on the two copyright registration numbers associated with plaintiff's software, as described above. Defendant argues that the software that plaintiff alleges was wrongfully copied and delivered to South Korea and Jordan was software created in 2008, identified as "NBC Analysis JWARN 1F Phase 2, CRID 1489, 1490, 1491," which is protected by U.S. Copyright Reg. No. TX0007836490. Defendant asserts that the "nucleus" of plaintiff's complaint is that defendant improperly transferred "software for JWARN Block 1F onto laptop computers that were delivered to South Korean and Jordanian forces in 2013," and that "[t]he plausible reading of BNT-US's allegations is that the software that was copied without authorization was BNT-Denmark's 'NBC Analysis JWARN 1F Phase 2, CRID 1489, 1490, 1491'" software, which was created in 2008, and not the software delivered under the 1998 contract. Defendant argues that this is the only plausible reading of the complaint because "BNT-US's allegations all associate the software transferred to the foreign countries with JWARN Block 1F (*i.e.*, the 2008 Software)." Defendant asserts that the 2008 software is separate and distinct from the software that plaintiff delivered under the 1998 contract, and that the two versions of the software are identified by different copyright registration numbers. Defendant argues that plaintiff's certified claim to the contracting officer only pertained to the 1998 contract and did not reference any contract relating to the government's procurement of the 2008 software. In defendant's motion to dismiss, counsel for defendant explains, "[c]ounsel for the government independently searched for any contract with BNT-US that could have resulted in the procurement of the 2008 Software, but the searches have not identified the relevant contract(s)." Defendant asserts that "[b]etween 1999 and 2004, BNT-US appears to have entered into approximately 15-20 different contracts and distinct purchase orders with the government relating to software development, procurement, and/or support," but defendant did not connect any of these different contracts to the delivery of the alleged 2008 software.

According to defendant, because plaintiff's certified claim to the contracting officer only pertained to the 1998 contract for software, and did not refer to the 2008 software,

"any alleged breach of contract with respect to the 2008 Software was not properly before the contracting officer, and could not have been the subject of the decision." Thus, defendant argues, although this court might have jurisdiction to consider plaintiff's breach of contract claim with regard to the 1998 software, "BNT-US has not satisfied the jurisdictional prerequisite of obtaining a contracting officer's final decision with respect to" the 2008 software, and, without a contracting officer's final decision, this court does not have subject matter jurisdiction to hear plaintiff's breach of contract claim relating to the 2008 software.

According to plaintiff, there are not two different versions of the software. Plaintiff rejects defendant's position that BNT-US must be alleging that a separate "2008 Software" was transferred to the South Korean and Jordanian armed forces in 2013. Plaintiff argues that, "[a]lthough the Government repeatedly refers to '2008 Software,' no such '2008 Software' exists." To the extent the government relies on the two separate copyright registration documents to suggest that "distinct or separate software products were delivered to the Government on dates after May 1998," the second registration "was only of updates and enhancements to the software code that were undertaken after its initial delivery in 1998." Plaintiff asserts that "there is, in fact, no distinction to be made between purported multiple items of software." Instead, "[t]he software code that the Government distributed to the armed forces of the ROK and Jordan in 2013 incorporated the same software source code that the Government took delivery of in 1998, which is the subject of the Software License." Plaintiff states that "[t]his is the same software source code that Plaintiff sought recourse for in its certified claim to the Government."

Thus, there appears to be a fundamental dispute between the parties as to whether plaintiff delivered one or more different versions of the software to defendant pursuant to the 1998 contract and before the time of the alleged breach "in or before March 2013," and whether there is more than one contract relevant to this dispute. The threshold issue for this court, however, is to determine whether the court has subject matter jurisdiction to consider plaintiff's claims. In both the certified claim and the complaint filed in this court, plaintiff alleges that defendant violated the software license agreement incorporated in the 1998 contract. In moving to dismiss plaintiff's claims, defendant focuses on which version of the software was allegedly transferred to the South Korean and Jordanian armed forces, and under what contract that software was delivered by plaintiff to the government. This determination of which version of software, if any, was transferred, however, is undeveloped in the record at this juncture, and will be relevant to proving or disproving the merits of plaintiff's breach of contract claim. The immediate issue for the court is to determine whether plaintiff has satisfied the jurisdictional requirements for filing its claim in this court so that the case may proceed.

This court finds that, after reviewing the certified claim submitted to the contracting officer, and the complaint filed in this court, plaintiff has satisfied the jurisdictional prerequisites set forth in the CDA for filing its breach of contract claim in this court. As required by the CDA, prior to filing its complaint in this court, plaintiff timely submitted a certified claim to the contracting officer alleging a breach of the 1998 contract between

plaintiff and defendant.[6] See 41 U.S.C. § 7103(a)(1). The certified claim submitted to the contracting officer was for breach by the government of the software license contained in the 1998 contract, through the unauthorized publication and distribution of software code that plaintiff had delivered to the government pursuant to the contract. Plaintiff subsequently filed its complaint in this court to contest the contracting officer's denial decision. Just as plaintiff alleged in its certified claim to the contracting officer, the complaint in the above-captioned case alleges that defendant breached the software license agreement in the 1998 contract. Plaintiff alleges in its complaint that "[t]he United States, both on its own and through contractors acting for the United States with its authorization and consent, breached the Contract by breaching the Software License" when defendant transferred the software to South Korean and Jordanian armed forces. Because plaintiff set forth its allegations in a certified, written claim to the contracting officer and received a contracting officer's final decision, this court has jurisdiction to consider plaintiff's breach of contract claim. See 41 U.S.C. § 7103; see also Roxco, Ltd. v. United States, 77 Fed. Cl. 138, 143 (2007) ("After the contracting officer issues a final decision on a claim, the contractor may either appeal to the appropriate board of appeals or to the Court of Federal Claims."). Notwithstanding defendant's theory that plaintiff's complaint is related to software delivered under some unspecified contract issued after the expiration of the 1998 contract, the allegations in plaintiff's certified claim to the contracting officer are the same as the allegations in plaintiff's complaint filed in this court, and both specifically assert allegations pertaining to a breach of the 1998 contract. See E & E Enters. Glob., Inc. v. United States, 120 Fed. Cl. 165, 174 (2015) (explaining that an action brought in the United States Court of Federal Claims under the CDA must be based on the same claim presented to the contracting officer). Accordingly, this court has subject matter jurisdiction to consider plaintiff's claim that defendant breached the 1998 software license agreement set forth in the 1998 contract between plaintiff and defendant.

In addition to its motion to dismiss plaintiff's breach of contract claim for lack of subject matter jurisdiction, defendant argues that, even if the court has subject matter jurisdiction to consider plaintiff's claim for breach of the 1998 contract, plaintiff has failed to properly state a claim for relief "because its allegations do not plausibly allege a breach." According to defendant, "BNT-US's allegations are extremely vague with respect to which version of the software was transferred," and "BNT-US's pleadings do not plausibly establish that the government's contractors disclosed or otherwise provided copies of the 1998 Software [created for JWARN Phase 1] in violation of the license in 2013 – approximately **fifteen** years after the 1998 Software was delivered." (emphasis in original).

In examining what must be pled in order to state a claim, a plaintiff need only state in the complaint "a short and plain statement of the claim showing that the pleader is

---

[6] In its submissions to the court, defendant does not dispute that plaintiff properly and timely submitted a certified claim to the contracting officer and that the contracting officer denied plaintiff's certified claim.

entitled to relief." RCFC 8(a)(2) (2016); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The United States Supreme Court has stated:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [Conley v. Gibson, 355 U.S. 41, 47 (1957)]; Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), see, e.g., Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, n.1 (2002); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely") . . . . [W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.

Bell Atl. Corp. v. Twombly, 550 U.S. at 555–56, 570 (footnote and other citations omitted; omissions in original); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555–57, 570); Frankel v. United States, No. 15-5146 (Fed. Cir. Dec. 1, 2016); A&D Auto Sales, Inc. v. United States, 748 F.3d 1142, 1157 (Fed. Cir. 2014); Bell/Heery v. United States, 739 F.3d 1324, 1330 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2014); Kam-Almaz v. United States, 682 F.3d 1364, 1367 (Fed. Cir. 2012) ("The facts as alleged 'must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 557)); Totes-Isotoner Corp. v. United States, 594 F.3d 1346, 1354–55 (Fed. Cir.), cert. denied, 562 U.S. 830 (2010); Bank of Guam v. United States, 578 F.3d 1318, 1326 (Fed. Cir.) ("In order to avoid dismissal for failure to state a claim, the complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 557)), reh'g and reh'g en banc denied (Fed. Cir. 2009), cert. denied, 561 U.S. 1006 (2010); Cambridge v. United States, 558 F.3d 1331, 1335 (Fed. Cir. 2009) ("[A] plaintiff must plead factual allegations that support a facially 'plausible' claim to relief in order to avoid dismissal for failure to state a claim." (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)); Cary v. United States, 552 F.3d 1373, 1376 (Fed. Cir.) ("The factual allegations must be enough to raise a right to relief above the speculative level. This does not require the plaintiff to set out in detail the facts upon which the claim is based, but enough facts to state a claim to relief that is plausible on its face." (citing Bell Atl. Corp. v.

Twombly, 550 U.S. at 555, 570)), reh'g denied (Fed. Cir.), cert. denied, 557 U.S. 937 (2009); Vargas v. United States, 114 Fed. Cl. 226, 232 (2014); Fredericksburg Non-Profit Housing Corp. v. United States, 113 Fed. Cl. 244, 253 (2013), aff'd, F. App'x 1004 (Fed. Cir. 2014); Peninsula Grp. Capital Corp. v. United States, 93 Fed. Cl. 720, 726–27 (2010), appeal dismissed, 454 F. App'x 900 (Fed. Cir. 2011); Legal Aid Soc'y of New York v. United States, 92 Fed. Cl. 285, 292, 298, 298 n.14 (2010).

When deciding a case based on a failure to state a claim, the court "must accept as true the factual allegations in the complaint." Engage Learning, Inc. v. Salazar, 660 F.3d 1346, 1355 (Fed. Cir. 2011); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555–56 (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002)))); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982), recognized by Davis v. Scherer, 468 U.S. 183, 190 (1984); United Pac. Ins. Co. v. United States, 464 F.3d 1325, 1327–28 (Fed. Cir. 2006); Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Boise Cascade Corp. v. United States, 296 F.3d 1339, 1343 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002), cert. denied, 538 U.S. 906 (2003). "A motion to dismiss will be denied unless it appear to a certainty that no possible set of facts could be proved to support plaintiff's claims." Am. Satellite Co. v. United States, 20 Cl. Ct. 710, 712 (1990).

Although defendant argues that plaintiff's allegations are too vague and fail to establish that defendant improperly transferred copies of software that plaintiff had delivered to the government in 1998, the court finds that the allegations in the complaint are sufficient to state a claim. In the complaint, plaintiff specifically defines its use of the term "Software" and explains that the term "refers to the subject software licensed by Plaintiff to Defendant under the Contract, regardless of whether designated as NBC Analysis software or CBRN-Analysis software." Plaintiff alleges that, pursuant to the 1998 contract, plaintiff delivered the software to defendant and that the software "has been used continuously by Defendant since the date of Contract award." Plaintiff alleges that, "in or before March 2013," the "Software was loaded onto several computer hard drives that were designated to be delivered to Republic of Korea . . . armed forces within laptop computers that would be operated by South Korean forces without oversight or monitoring by" the Department of Defense. Plaintiff also alleges that "[i]n or about May 2013, Plaintiff also became aware that DoD had provided copies of the Software to the air force of the Kingdom of Jordan, in breach of the Software License." Plaintiff alleges that defendant, or contractors authorized by defendant, were responsible for transferring the software to South Korean and Jordanian armed forces. Plaintiff contends that the software transferred to South Korean and Jordanian armed forces was subject to the software license agreement included in the 1998 contract between plaintiff and the government, which prohibited the government from disclosing, selling, giving, licensing, or otherwise providing copies of the software or use of the software to "governments of foreign countries."

Presumed to be true for the purpose of defendant's motion to dismiss under RCFC 12(b)(6), the facts alleged in plaintiff's complaint are sufficient to plausibly establish that plaintiff delivered software to defendant in 1998 that was subject to a software license agreement which defendant continued to use, and that, in 2013, defendant transferred the software to South Korean and Jordanian armed forces allegedly in violation of the software license agreement included in the 1998 contract. As noted in <u>Greenlee County, Arizona v. United States</u>, a motion to dismiss will be denied unless it appears to a certainty that no possible set of facts could be proved to support plaintiff's claims. See <u>Greenlee County, Ariz. v. United States</u>, 487 F.3d at 877. Plaintiff has met this burden because it has set forth sufficient facts that, if true, would establish plaintiff's entitlement to relief for breach of contract.

**Plaintiff's Copyright Infringement and Uniform Trade Secrets Act Claims**

In addition to plaintiff's breach of contract claim, the complaint alleges that defendant violated the United States Copyright Act, 17 U.S.C. § 102, when it transferred plaintiff's software to South Korean and Jordanian armed forces. According to plaintiff, "[t]he Government's violation of the Copyright Act was undertaken in contradiction of BNT-Denmark's exclusive right to determine whether and when to copy" the copyrighted software. Plaintiff alleges that "Bruhn NewTech" has sustained and will continue to sustain injury, loss, and damage to its ownership rights in the software, and is entitled to recover damages from defendant.

In response, defendant argues that plaintiff's assertion that its copyright infringement claim is jurisdictionally grounded in the United States Copyright Act codified in Title 17 is legally erroneous because that statute is limited to actions against a "State," rather than the federal government. See 17 U.S.C. § 501(a) (explaining that the liability for infringement of copyright under Title 17 is limited to "any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity"). Defendant asserts that "BNT-US's copyright infringement claim against the government must be interpreted as a Section 1498(b) claim, because that is the only waiver of sovereign immunity for such a claim." Defendant argues that, "BNT-US has not established jurisdiction in this case because it has not shown that it is the copyright owner of the allegedly infringed works," but, instead, it appears that plaintiff's parent corporation, BNT-Denmark, is the copyright owner. Defendant argues this court should dismiss plaintiff's copyright infringement claim because plaintiff is not the copyright owner of any exclusive right protected by copyright. Defendant points to statements in plaintiff's complaint to support its position, including plaintiff's statement that "[t]he Software is the primary product of **BNT-Denmark, which is the proprietor of registered copyrights** in the United States on the computer source code within the Software." (emphasis in original).

Defendant is correct that 28 U.S.C. § 1498(b), not Title 17, grants this court jurisdiction to consider claims of copyright infringement against the United States, and that the statute provides that an action for such infringement only may be brought by "the copyright owner." 28 U.S.C. § 1498(b) (2012); see also <u>Gaylord v. United States</u>, 777 F.3d 1363, 1367 (Fed. Cir. 2015) (explaining that Congress waived the sovereign

immunity of the United States to allow copyright owners to recover for copyright infringement carried out by the United States); Cohen v. United States, 98 Fed. Cl. 156, 161 (2011) ("Copyright infringement suits against the United States are governed by 28 U.S.C. § 1498(b)."). The statute states:

> Hereafter, whenever the copyright in any work protected under the copyright laws of the United States shall be infringed by the United States, by a corporation owned or controlled by the United States, or by a contractor, subcontractor, or any person, firm, or corporation acting for the Government and with the authorization or consent of the Government, the exclusive action which may be brought for such infringement shall be an action by the copyright owner against the United States in the Court of Federal Claims for the recovery of his reasonable and entire compensation as damages for such infringement, including the minimum statutory damages. . . .

28 U.S.C. § 1498(b) (emphasis added). The term "copyright owner" is not defined in 28 U.S.C. § 1498 and it has not been defined in cases which discuss the statute. See Cohen v. United States, 98 Fed. Cl. at 161 (noting that the term "copyright owner" has not "been the subject of a dispositive analysis by the United States Court of Appeals for the Federal Circuit"). Plaintiff argues that the term "copyright owner" includes both legal and beneficial owners of the copyright. To support its position, plaintiff cites the United States Copyright Act codified at Title 17, which states that "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). Plaintiff also cites to decisions of courts other than this court finding that, under Title 17, a beneficial owner can bring an infringement action to protect its economic interest. As stated above, however, Title 17, sets forth the copyright cause of action that may be brought among non-federal parties and does not authorize a cause of action against the United States. Defendant contends that the waiver of sovereign immunity contained in 28 U.S.C. § 1498(b) is "decidedly narrower" than the cause of action that may be brought under Title 17 against a private party. Defendant argues that, although Title 17 allows the legal or beneficial owner of an exclusive right under a copyright to institute an infringement action, the sovereign immunity waiver in 1498(b) is limited to the "the copyright owner." 28 U.S.C. § 1498(b).

The United States Court of Appeals for the Federal Circuit has not addressed whether the waiver of sovereign immunity codified at 28 U.S.C. § 1498(b), which allows a "copyright owner" to bring a copyright infringement action against the United States, extends to legal and beneficial owners of an exclusive right under a copyright. Additionally, it does not appear that other judges on this court have decided the issue since the decision in Cohen v. United States, 98 Fed. Cl. at 161, in which the court declined to decide if Section 1498(b) extended to beneficial owners of copyright because the plaintiff in that case was both the legal and beneficial owner of the exclusive rights. As defendant suggests, it is well-established in this court that any uncertainty regarding the scope of a waiver of sovereign immunity should be resolved by construing the waiver narrowly. See Blueport Co., LLC. v. United States, 533 F.3d 1374, 1381 (Fed. Cir. 2008). The court finds, however, that it need not determine whether the term "copyright owner"

in 28 U.S.C. § 1498(b) includes legal and beneficial copyright owners because, as discussed below, plaintiff BNT-US is neither the legal nor beneficial owner of an exclusive right under the copyright protected software at issue in this case.

It does not appear from the pleadings that plaintiff BNT-US is the legal copyright owner of the software at issue, nor does that fact appear to be disputed by the parties. Significantly, plaintiff does not allege to be the legal copyright owner of the software. The complaint states that "[t]he Software is the primary product of BNT-Denmark, which is the proprietor of registered copyrights in the United States on the computer source code within the Software." Plaintiff states that "BNT-Denmark gained United States copyright registration" for the software plaintiff delivered under the 1998 contract and for the updates and improvements that were subsequently made to the software. The Certificates of Copyright for the software state that the "Author" is "Bruhn NewTech A/S" and the "Copyright Claimant" is "Bruhn NewTech A/S," "Citizen of: Denmark." Based on plaintiff's representations in the complaint, and the documents submitted to the court, BNT-Denmark appears to be the legal copyright owner. See Cohen v. United States, 98 Fed. Cl. at 162 (holding that the "legal ownership of a copyright in a work initially vests in the author of the work," and the author retains the exclusive rights unless and until such rights are transferred).

Plaintiff argues that it is the beneficial owner of the subject copyrights with standing to bring a copyright infringement action to protect its economic interests. Plaintiff asserts that "[a] beneficial owner is a person or entity with an economic interest in the copyright," and argues that that this court should apply the substantive law of Title 17 to define the term "copyright owner" in 28 U.S.C. § 1498(b). As explained above, section 501(b) of Title 17 permits both legal and beneficial copyright owners to institute a copyright infringement action. The language of 17 U.S.C. § 501 requires, however, that a legal or beneficial owner must hold an exclusive right under a copyright in order to institute a copyright infringement action. 17 U.S.C. § 501(b).

To prove its status as a beneficial owner, plaintiff cites to its "Non-Exclusive Software License Agreement" with BNT-Denmark, which plaintiff submitted for the court's review. Plaintiff argues that "[a]s the holder of a valuable right to sell, lease, market, demonstrate and distribute the software in the United States and other areas outside of Europe," BNT-US is a beneficial owner of the subject copyrights. A review of the agreement establishes, however, that plaintiff is not the beneficial owner of an exclusive right under a copyright. The pertinent language of the agreement states:

> The LICENSOR hereby grants to the LICENSEE and the LICENSEE hereby accepts a personal, non-exclusive and nontransferable right to sell, lease, market, demonstrate and distribute during the term hereof, within the specified Territory, the Product to End Users upon the terms and conditions of the Agreement.

. . .

> The LICENSOR is the sole owner of the Product within the meaning of Section 201 of the U.S. Copyright Act of 1976, 17 U.S.C. § 201. . . . The LICENSOR has the unrestricted and unencumbered right to license the Product to the LICENSEE.
>
> . . .
>
> The LICENSOR retains all copyrights, trademarks, and other proprietary interests in and to the Product and the Documentation. Nothing in this Agreement shall be construed to grant to the LICENSEE, the End Users, or any others, any such interest in the Product.
>
> . . .
>
> The LICENSOR hereby grants to the LICENSEE the concurrent right to prosecute and defend any and all copyright, trademark and/or service mark infringements, violations or any other actions with the United States, Canada or Far East during the term of the Agreement. . . . [T]he LICENSOR shall have the right to exclusively control any such litigation or administrative proceedings arising out of any such infringement, challenge or claim or otherwise relating to any copyright, trademark or service mark, if any.

(capitalization in original).

Under the terms of the non-exclusive license, plaintiff is authorized to sell, lease, market, demonstrate and distribute the software in the United States and other areas outside of Europe. As the quoted language demonstrates, however, the agreement between BNT-US and BNT-Denmark is non-exclusive and does not invest any ownership or other exclusive rights to the copyright in BNT-US. The non-exclusive license agreement indicates that BNT-Denmark could authorize other business entities to sell, market, lease, demonstrate and distribute the software in the same geographic area as plaintiff. Moreover, the agreement explicitly states that for purpose of the United States Copyright Act of 1976, BNT-Denmark is the "sole owner" of the software. Additionally, the non-exclusive license explicitly states that the licensor, BNT-Denmark, "retains all copyrights" and "other proprietary interests" in the software. Although plaintiff argues that it is a beneficial owner of the copyright because it has an economic interest in selling and otherwise distributing the software in certain geographic areas, plaintiff has not demonstrated that it holds an exclusive right to sell, market, lease, demonstrate or distribute the software, or any other exclusive right. In fact, the complaint acknowledges that it is BNT-Denmark that holds exclusive rights in the software, but the complaint does not allege that BNT-US has similar exclusive rights. Plaintiff asserts in the complaint that, as the "owner and registrant of the copyrights," "BNT-Denmark enjoys 'a bundle of exclusive rights' under Section 106 of the Copyright Act," and that "[c]opyright owners are entitled to remedies for copyright infringement that include injunctive relief, impounding of infringing works and copies, damages for lost profits, statutory damages, [and] attorney fees." The complaint, however, does not allege that BNT-US exclusively holds a single stick in the bundle of rights.

Thus, although neither the Federal Circuit, nor this court, have interpreted the waiver of sovereign immunity at 28 U.S.C. § 1498(b) to include legal and beneficial copyright owners, even if the court were to apply the substantive law of Title 17 to determine whether the waiver of sovereign immunity includes beneficial copyright owners, plaintiff BNT-US would not have standing to pursue its copyright infringement action against the United States. Title 17 authorizes a "legal or beneficial owner <u>of an exclusive right</u> under a copyright" to initiate a cause of action against a non-federal party, but plaintiff has not established, much less alleged, that it holds any exclusive rights in the copyright software. (emphasis added). 17 U.S.C. § 501(b). Accordingly, because plaintiff has not established that it is the "copyright owner," this court finds that it does not have subject matter jurisdiction under 28 U.S.C. § 1498(b) to hear plaintiff's claim of copyright infringement against the United States.[7]

In its opposition to defendant's motion to dismiss, plaintiff more recently asked that the court grant BNT-Denmark leave to intervene as an additional plaintiff in this case. Notwithstanding plaintiff's request, BNT-Denmark has not moved to intervene pursuant to RCFC 24, which sets forth the mechanism for intervening in a proceeding before this court. Given that BNT-Denmark has not sought leave of this court to intervene in this case, the court does not consider BNT-Denmark to be a party in the above-captioned case.

With regard to plaintiff's cause of action asserting that defendant violated the Uniform Trade Secrets Act, that claim fails. First, the Uniform Trade Secrets Act is not binding law as it is not incorporated into the United State Code, but instead it is a model statute proposed for general consideration and must be enacted by individual jurisdictions to become law. <u>See</u> 134 Am. Jur. 3d <u>Proof of Facts</u> § 2 (2014) (explaining that "The Uniform Trade Secrets Act is a uniform statute that has been adopted by the majority of states."). As it is not codified in the United States Code, the United States has not waived sovereign immunity for claims brought under the Uniform Trade Secrets Act.

Furthermore, to the extent plaintiff attempts to allege a violation of the Trade Secrets Act, 18 U.S.C. § 1905, that section is a criminal statute and this court does not have jurisdiction to enforce criminal statutes. <u>See</u> <u>Joshua v. United States</u>, 17 F.3d 378, 379 (Fed. Cir. 1994); <u>Mendes v. United States</u>, 88 Fed. Cl. 759, 762 (finding that the court lacked jurisdiction to consider plaintiff's criminal claims), <u>appeal</u> <u>dismissed</u>, 375 F. App'x 4 (Fed. Cir. 2009); <u>McCullough v. United States</u>, 76 Fed. Cl. 1, 4 (2006) (similarly finding that the court lacked jurisdiction to consider plaintiff's criminal claims), <u>appeal</u> <u>dismissed</u>, 236 F. App'x 615 (Fed. Cir.), <u>reh'g</u> <u>denied</u> (Fed. Cir.), <u>cert.</u> <u>denied</u>, 552 U.S. 1050 (2007).

---

[7] Because the court concludes that BNT-US is neither the legal nor beneficial copyright owner of an exclusive right in the software at issue, it is not necessary for the court to address defendant's additional grounds for dismissal of plaintiff's copyright infringement claim, including that the claim is time-barred under 28 U.S.C. § 1498.

## CONCLUSION

For the reasons explained above, defendant's motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction and for failure to state a claim for relief is **GRANTED, in part** and **DENIED, in part**. Plaintiff's copyright infringement and violation of the Uniform Trade Secrets Act claims, set forth as Counts II and III in the complaint, are **DISMISSED**. Count I of plaintiff's complaint, the breach of contract cause of action, remains for further proceedings.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
 **Judge**