IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| BRUHN NEWTECH, INC., *et al.*, | **REDACTED VERSION** |
| Plaintiffs, | |
| v. | No. 16-783 C |
| THE UNITED STATES, | Senior Judge Marian Blank Horn |
| Defendant. | |

# DEFENDANT'S MOTION TO REFER COPYRIGHT REGISTRATION QUESTIONS TO THE REGISTER OF COPYRIGHTS

|  |  |
|---|---|
|  | JOSEPH H. HUNT<br>Assistant Attorney General |
|  | GARY L. HAUSKEN<br>Director |
| December 3, 2018 | SCOTT BOLDEN<br>Deputy Director<br>Commercial Litigation Branch<br>Civil Division<br>Department of Justice<br>Washington, DC 20530<br>Email: Scott.Bolden@USDOJ.gov<br>Telephone: (202) 307-0262<br>Facsimile: (202) 307-0345 |
|  | *Attorneys for Defendant the United States* |

TABLE OF CONTENTS

BACKGROUND ............................................................................................................................ 2

ARGUMENT ................................................................................................................................. 3

    I.     "NBC Analysis JWARN 1F PHASE 2, CRID 1489, 1490, 1491" are Three Separate Works, Rather than a Single Work ................................................. 5

    II.    The Software Programs Claimed in the '490 Registration Incorporated Source Code Owned by Other Entities ..................................................................... 6

    III.   The Software Programs Claimed in Both Registrations were Completed in Later Years than Those Asserted by BNT-Denmark .............................................. 8

    IV.   The Software Programs Claimed in Both Registrations were First Published in the United States, rather than Denmark .......................................... 10

    V.    BNT-Denmark Knew That the Information Provided was Inaccurate ................. 11

CONCLUSION ............................................................................................................................ 13

## TABLE OF AUTHORITIES

**Cases**
DeliverMed Holdings, LLC v. Schaltenbrand, 734 F.3d 616 (7th Cir. 2013) ............................... 4

Ford Motor Co. v. United States, 635 F.3d 550 (Fed. Cir. 2011) .................................................. 4

Grayton v. United States, 92 Fed. Cl. 327 (2010) ......................................................................... 4

Keehn v. United States, 110 Fed. Cl. 306 (2013) .......................................................................... 4

Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154 (2010) .................................................................. 4

Roberson v. United States, 115 Fed. Cl. 234 (2014) ..................................................................... 4

**Statutes**
17 U.S.C. § 101 ..................................................................................................................... *passim*

17 U.S.C. § 408 ............................................................................................................................ 5, 6

17 U.S.C. § 409 ..................................................................................................................... *passim*

17 U.S.C. § 411 ..................................................................................................................... *passim*

17 U.S.C. § 412 ............................................................................................................................. 11

17 U.S.C. § 506 ............................................................................................................................. 12

28 U.S.C. § 1498 ........................................................................................................................ 3, 8

**Other Authorities**
37 C.F.R. § 202 ..................................................................................................................... 5, 6, 12

Compendium of U.S. Copyright Office Practices, Third Edition ......................................... *passim*

Copyright Office Circulars ......................................................................................................... 3, 5

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| BRUHN NEWTECH, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant. | No. 16-783 C <br><br> Senior Judge Marian Blank Horn |

**DEFENDANT'S MOTION TO REFER
COPYRIGHT REGISTRATION QUESTIONS TO THE REGISTER OF COPYRIGHTS**

Defendant, the United States (the Government), moves pursuant to 17 U.S.C. § 411(b) that the Court request advice from the Register of Copyrights regarding inaccurate information in both of the copyright registrations claimed by Plaintiff Bruhn NewTech, A/S (BNT-Denmark). Section 411(b)(2) of the Copyright Act provides that where, as here, a party alleges that inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate, "the court **shall** request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(2) (emphasis added). The Government moves that the Court request the Register's views on the following two questions:

1. Would the Register of Copyrights have rejected Copyright Registration No. TX 7-836-490 (titled "NBC Analysis JWARN 1F PHASE 2, CRID 1489, 1490, 1491") had it known that:

    (a) the claimed "work" actually encompasses three different separately-published versions of a computer program;

    (b) the three versions incorporated source code owned by other entities, including the Government;

    (c) the three versions were completed in 2012, rather than 2008; and

-1-

(d) the three versions were first published in the United States, rather than Denmark?

2. Would the Register of Copyrights have rejected Copyright Registration No. TX 7-836-500 (titled "NBC Analysis – CRID 0040") had it known that:

(a) the computer program was completed in 1999, rather than 1998; and

(b) the computer program was first published in the United States, rather than Denmark?

## BACKGROUND

For at least 15 years, Plaintiff Bruhn NewTech, Inc. (BNT-US) worked on a series of different contracts and subcontracts supporting the Government's Joint Warning and Reporting Network (JWARN) program. See Stip. ¶ 22.[1] The United States military uses JWARN as a warning and reporting tool for chemical, biological, radiological and nuclear (CBRN) events. In 1998, the United States Marine Corps procured "NBC-Analysis" software from BNT-US as the Commercial-Off-The-Shelf" (COTS) software component to JWARN. See Stip. ¶¶ 11-13. Subsequently, the Government paid BNT-US to update, modify, and fix NBC-Analysis, and to incorporate Government-owned software. See Stip. ¶¶ 14, 22, 33-34, 40, 60. For each delivery made by BNT-US to the Government, BNT-US and its corporate parent, Plaintiff Bruhn NewTech, A/S (BNT-Denmark), assigned a unique Customer Release Identification (CRID) number. See Stip. ¶¶ 1, 2, 36.

Plaintiffs' suit against the Government is based on two counts: breach of contract and copyright infringement. See ECF 36 ¶ 1. With respect to the copyright count, Plaintiff Bruhn NewTech, A/S (BNT-Denmark) alleges that the Government infringed its purported copyrights in Copyright Registration Nos. TX 7-836-490 ("the '490 Registration") and TX 7-836-500 ("the '500 Registration"). See id. ¶¶ 29, 69-75. As indicated in the '500 Registration, BNT-Denmark

---

[1] "Stip." refers to the parties' previously-filed Stipulated Uncontested Facts. See ECF 81.

-2-

claims copyright in a computer program titled "NBC Analysis - CRID 0040" that was completed in 1998 and first published in Denmark on January 12, 1999. A16-17. As indicated in the '490 Registration, BNT-Denmark claims copyright in a computer program titled "NBC Analysis JWARN 1F PHASE 2, CRID 1489, 1490, 1491" that was completed in 2008 and first published in Denmark on September 28, 2012. A1-2.

An application for copyright registration must comply with the requirements of the Copyright Act. See 17 U.S.C. §§ 408(a), 409, 410. The Copyright Office has also published regulations regarding applications for registration. See 37 C.F.R. §§ 202.1 - 202.21. The Copyright Office provides at least two other published sources of its procedures, practices, and guidance: (1) the Compendium of U.S. Copyright Office Practices, Third Edition[2] ("Compendium"); and (2) Copyright Office Circulars[3].

The parties began engaging in fact discovery in February 2017. On August 3, 2018, Plaintiffs' expert witness, a former employee of BNT-US, submitted an expert report that included an analysis of the revisions to the source code files in different deliveries. During the course of fact and expert discovery, the Government discovered that the '490 and '500 Registrations contain inaccurate information, including, inter alia, the identity of the work claimed, the failure to identify incorporated preexisting works, the date of completion, and the nation of first publication.

## ARGUMENT

This Court has exclusive jurisdiction to adjudicate claims of copyright infringement against the United States. See 28 U.S.C. § 1498(b). In turn, Section 411(a) of the Copyright Act requires that a plaintiff must ordinarily possess a copyright registration before filing an

---

[2] See https://www.copyright.gov/comp3/ .
[3] See https://www.copyright.gov/circs/ .

infringement claim. See 17 U.S.C. § 411(a). The Supreme Court has recently held that, although copyright registration is not a jurisdictional requirement, it is a "precondition to filing a claim" for infringement. Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 157-58 (2010); see also Ford Motor Co. v. United States, 635 F.3d 550, 554 (Fed. Cir. 2011) (recognizing Muchnick to have held that "copyright registration is a precondition to filing a valid infringement claim").

Recent opinions of this Court have consistently dismissed Section 1498(b) copyright claims in the absence of a copyright registration. See, e.g., Roberson v. United States, 115 Fed. Cl. 234, 241 (2014) (dismissing plaintiff's copyright infringement claim for failing to satisfy the "procedural prerequisite" of registering the copyright); Keehn v. United States, 110 Fed. Cl. 306, 335 (2013) (stating that "[a]s a condition to bringing suit for copyright infringement, a plaintiff must establish that the copyright has been registered, applied for, or denied"); Grayton v. United States, 92 Fed. Cl. 327, 337-38 (2010) (finding registration to be "a prerequisite to filing" a claim).

Section 411(b) of the Copyright Act provides a mechanism to obtain the views of the Copyright Office regarding registrations asserted during litigation. Where, as here, a party alleges that inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate, "the court **shall** request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(2) (emphasis added). The Seventh Circuit has held that a trial court must obtain the views of the Copyright Office prior to invalidating a copyright registration. See DeliverMed Holdings, LLC v. Schaltenbrand, 734 F.3d 616, 624 (7th Cir. 2013).

I. **"NBC ANALYSIS JWARN 1F PHASE 2, CRID 1489, 1490, 1491" ARE THREE SEPARATE WORKS, RATHER THAN A SINGLE WORK**

The '490 Registration purports to identify a single work named titled "NBC Analysis JWARN 1F PHASE 2, CRID 1489, 1490, 1491." Fact and expert discovery have shown, however, that the software programs delivered with CRID 1489, 1490, and 1491 are three separate works that should have been separately registered.

According to the Copyright Act:

> A work is "created" when it is fixed in a copy . . . for the first time; where a work is prepared over a period of time, the portion of it that has been fixed at any particular time constitutes the work as of that time, and **where the work has been prepared in different versions, each version constitutes a separate work**.

17 U.S.C. § 101 (emphasis added); see also Compendium § 611.1(B) ("If the author created multiple versions of the same work, each version is considered a separate work."). Consistent with this statutory principle, the Copyright Office's guidance states that "each version of a computer program containing new, copyrightable authorship is considered a separate work." Copyright Office Circular 61. The Copyright Office generally allows only registration per work. See 17 U.S.C. § 408; 37 C.F.R. § 202.3(b)(11).[4]

The available evidence in this case shows that "NBC Analysis JWARN 1F PHASE 2, CRID 1489, 1490, 1491" refers to three separate works of software. The title of the work expressly refers to three separate CRID numbers, unique designations assigned by BNT-Denmark and BNT-US for each software delivery. See Stip. ¶ 36. Each CRID number refers to a different version of the software being delivered: CRID 1489 incorporated a "Standalone" version of JWARN Block 1F Phase 2; CRID 1490 incorporated a "C2PC" version of JWARN

---

[4] In limited circumstances, the Copyright Office permits registration of multiple works, such as for group registrations of automated databases and daily newspapers. See, e.g., 37 C.F.R. § 202.3(b)(5-6, 9). None of those circumstances apply to the published computer program works that BNT-Denmark sought to register.

-5-

Block 1F Phase 2; and CRID 1491 incorporated an "MCS" version of JWARN Block 1F Phase 2. See Stip. ¶¶ 35, 39; see also A32-34. Each of the three versions were fixed into and delivered on separate CD-ROMs. See A13-15. The deliveries of each of the three were accompanied by different "Delivery Notes." See A32-34.

The '490 Registration also identifies the titled work as a "compilation." A1. This is inaccurate, to the extent that BNT-Denmark implies that the three versions were combined together through the "collection and assembling of preexisting materials" to create a new work. See 17 U.S.C. § 101. As explained above, the three versions were not combined together.

Accordingly, the title and description of the claimed work in the '490 Registration is inaccurate. BNT-Denmark never created or published a single work titled "NBC Analysis JWARN 1F PHASE 2, CRID 1489, 1490, 1491" – the title represents an improper combination of three works that should have been registered separately, if at all. The Copyright Act and the Copyright Office's practices suggest that an accurate identification of the work is significant for purposes of registrability. See, e.g., 17 U.S.C. §§ 408, 409(6); 37 C.F.R. § 202.3(b)(11). And an accurate identification of the asserted works is material in this case. BNT-Denmark has never alleged that the Government infringed a copyright with respect to CRID 1491 – one of the versions improperly claimed in the '490 Registration. At the very least, a proper identification of the copyrighted work is necessary for BNT-Denmark to prove infringement.[5]

## II. THE SOFTWARE PROGRAMS CLAIMED IN THE '490 REGISTRATION INCORPORATED SOURCE CODE OWNED BY OTHER ENTITIES

The '490 Registration expressly excludes "previous versions" from the scope of the copyright claim, but the registration identifies no other exclusions. Fact and expert discovery

---

[5] For example, a proper identification of the copyrighted work is necessary for the "abstraction-filtration-comparison" test often used to demonstrate copyright infringement of computer programs. See Oracle Am., Inc. v. Google Inc., 750 F.3d 1339, 1357-58 (Fed. Cir. 2014); Computer Assocs. Int'l v. Altai, Inc., 982 F.2d 693, 706-12 (2d Cir. 1992).

-6-

have shown that BNT-Denmark failed to tell the Copyright Office that the claimed software programs incorporated source code owned by other entities.

The Copyright Act requires applicants to identify "any preexisting work or works that [a compilation or derivative work] is based on or incorporates." 17 U.S.C. § 409(9). BNT-Denmark, however, did not inform the Copyright Office that significant portions of CRID 1489, 1490, and 1491 included Government-owned source code. This inaccuracy is highlighted by the parties' stipulations. For example, Plaintiffs stipulated that the claimed work in the '490 Registration includes:

> (1) portions that were developed at private expense; and (2) portions that were developed by BNT-US under subcontracts between BNT-US and one or more contractors to the United States and contracts directly with the Government. BNT-US received payment for this development work from those contracts and subcontracts.

Stip. ¶ 61. Similarly, Plaintiffs stipulated that CRID 1489 and 1490 included Government-owned components:

> The software object code in CRIDs . . . 1489[] and 1490 was compiled from a combination of COTS source code and [Government-Off-The-Shelf] source code. The software object code in all three deliveries included Government-owned components for Battlefield Management Functions. The software object code in CRID[] . . . 1490 included Government-owned C2PC integration code.

Stip. ¶ 40; see also id. ¶¶ 33-35. In addition, Plaintiffs' expert identified numerous other third-parties whose software code had been incorporated into the asserted works. See, e.g., A55 (purporting to provide spreadsheets that "list the portions of code developed by Bruhn NewTech developers, and those portions developed by persons or entities outside of Bruhn NewTech").

Accordingly, the '490 Registration's identification of material excluded from BNT-Denmark's claim is inaccurately narrow. The Copyright Act and the Copyright Office's practices suggest that an accurate description of the material excluded is significant for purposes of registrability. See, e.g., 17 U.S.C. § 409(9); Compendium § 621 ("A claim should be limited

-7-

if the work contains an appreciable amount of . . . material that is owned by an individual or legal entity other than the claimant who is named in the application."). And this issue is material in this case. The Government contends that incorporation of Government-owned materials would jurisdictionally bar BNT-Denmark's copyright claim pursuant to 28 U.S.C. § 1498(b); but even assuming liability, BNT-Denmark's use of Government-owned materials would be highly relevant to determining reasonable compensation.

### III. THE SOFTWARE PROGRAMS CLAIMED IN BOTH REGISTRATIONS WERE COMPLETED IN LATER YEARS THAN THOSE ASSERTED BY BNT-DENMARK

The '490 and '500 Registrations each identify a "Year of Completion" for the works claimed. Fact and expert discovery have shown, however, that the dates claimed in each registration are incorrect.

The Copyright Act requires applicants to identify "the year in which creation of the work was completed." 17 U.S.C. § 409(7). As noted *supra* in Section I, a "work is 'created' when it is fixed in a copy . . . for the first time." 17 U.S.C. § 101; see also Compendium § 611 (same).

The available evidence in this case shows that the software versions were completed during different years than those asserted by BNT-Denmark to the Copyright Office. BNT-Denmark maintained at least three sets of internal records that identify the completion date for each version of software. First, BNT-Denmark identified the completion date in a spreadsheet listing its deliveries. Second, BNT-Denmark recorded the completion date in its "Delivery Notes" that were included with its software deliveries. Third, metadata within the source code for each version identified the date each work was created.[6] Each of these sources demonstrates

---

[6] Plaintiffs' expert extracted portions of this metadata in spreadsheets attached to his expert report. Excerpts of the spreadsheets are cited in the text of this motion and attached as exhibits.

-8-

that the computer programs were completed in different years than those it asserted during copyright registration:

| Copyright Registration | Work by CRID | Asserted Date Completed | Date in Spreadsheet | Date in Delivery Note | Date in Source Code (Pl. Expert) |
|---|---|---|---|---|---|
| '500 | CRID 40 | 1998 See A16. | 1999 See A30. | 1999 See A31. | 1999 See A35. |
| '490 | CRID 1489 | 2008 See A1. | 2011[7] See A30. | 2011 See A32. | 2012 See A36. |
| '490 | CRID 1490 | 2008 See A1. | 2012 See A30. | 2012 See A33. | 2012 See A37. |
| '490 | CRID 1491 | 2008 See A1. | 2012 See A30. | 2012 See A34. | N/A |

Accordingly, the dates of completion in both registrations are inaccurate. The Copyright Act and the Copyright Office's practices suggest that the accuracy of the year of completion is significant for purposes of registrability. See, e.g., 17 U.S.C. § 409(7); Compendium § 611 ("The year of creation is particularly important in the case of a work made for hire . . . ."); Compendium § 611.1(B) ("the applicant should provide the year of completion for the specific version that is being registered"); Compendium § 611.2(A) (specifying that Copyright Office may communicate with the applicant if the year of completion is apparently incorrect). The year of completion for each software version is material in this case because it is relevant to the identification of the relevant contract and potentially relevant to the construction of a hypothetical negotiation for purposes of determining reasonable compensation.

---

[7] The spreadsheet and the delivery note appear to incorrectly state "2011," instead of "2012." The parties stipulated that the CRID 1489 delivery occurred in 2012. See Stip. ¶ 39.

-9-

## IV. THE SOFTWARE PROGRAMS CLAIMED IN BOTH REGISTRATIONS WERE FIRST PUBLISHED IN THE UNITED STATES, RATHER THAN DENMARK

The '490 and '500 Registrations each identify a "Nation of 1st Publication" for the works claimed. Fact and expert discovery have shown, however, that the nation of publication claimed in each registration is incorrect.

The Copyright Act requires applicants to identify "the date and nation of [a published work's] first publication." 17 U.S.C. § 409(8). As defined by the Act:

> "Publication" is the distribution of copies . . . of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies . . . to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication . . . .

17 U.S.C. § 101. According to the Copyright Office, software is published "when copies are distributed by purchase or license . . . in CD-ROM format." Compendium § 612.2. The nation of first publication "is the country where copies . . . of the work were first published with the authorization of the copyright owner." Compendium § 612.5.

The available evidence in this case shows that the software versions at issue were first published in the United States; rather than Denmark, as asserted by BNT-Denmark to the Copyright Office. BNT-Denmark maintained at least two sets of internal records that identify the country of publication for each version of software – BNT-Denmark's spreadsheets and BNT-US's Delivery Notes. These sources demonstrate that the computer programs were first published in the United States:

-10-

| Registration | Work by CRID | Asserted Nation of Publication | Country in Spreadsheet | Country in Delivery Note |
|---|---|---|---|---|
| '500 | CRID 40 | Denmark See A16. | US See A30. | US See A31. |
| '490 | CRID 1489 | Denmark See A1. | US See A30. | US See A32. |
| '490 | CRID 1490 | Denmark See A1. | US See A30. | US See A33. |
| '490 | CRID 1491 | Denmark See A1. | US See A30. | US See A34. |

In addition, Plaintiffs stipulated that CRID 40, 1489, and 1490 were delivered in California. See Stip. ¶¶ 37, 39. And BNT-US's Delivery Notes suggest that any extraterritorial publication of JWARN software could have violated export control laws. See A32-35. Finally, the labels of the CD-ROMs that BNT-Denmark deposited with the Copyright Office suggest that CRID 1489, 1490, and 1491 were distributed by BNT-Denmark's subsidiary in the United States. See A13-15.

Accordingly, the country of first publication in both registrations (Denmark) appears to be inaccurate. The Copyright Act and the Copyright Office's practices suggest that the nation of first publication is significant for purposes of registrability. See, e.g., 17 U.S.C. § 101 (defining a "United States work"); 17 U.S.C. § 409(8); Compendium § 612.7; 612.7(A-B, J-L). The nation of first publication is material in this case because the copyright registration requirement typically applies only to a "United States work," and it may affect the remedies that BNT-Denmark seeks to claim. See 17 U.S.C. §§ 411, 412.

**V. BNT-DENMARK KNEW THAT THE INFORMATION PROVIDED WAS INACCURATE**

As the purported author of the software programs, BNT-Denmark knew that the information submitted to the Copyright Office was inaccurate. This information was peculiarly

-11-

within BNT-Denmark's own knowledge. In both of the applications for registration, BNT-Denmark was informed of its obligation to ensure the accuracy of its representations; and in each application, BNT-Denmark (via its counsel) certified the accuracy of the factual representations, with the understanding that material false statements will result in cancellation of the registration. See 37 C.F.R. § 202.3(c)(2)(iii) (requiring certification); 17 U.S.C. § 411 (providing for cancellation); see also 17 U.S.C. § 506(e) (providing for fines).

The sources of evidence for the accurate information were all within BNT-Denmark's control. As cited above, the accurate information was maintained in: BNT-Denmark's spreadsheets; in BNT-US's "Delivery Notes"; and in the source code for each version. There is no reasonable justification for the inaccuracies in the registrations in light of Plaintiffs' possession of the accurate information.

The testimony of several witnesses also demonstrates that accurate information was known to the Plaintiffs. BNT-US's current and former employees testified that: (1) each new version of the software was assigned a different CRID[8]; (2) Government-owned materials were used to create the software[9]; (3) the year of completion for a software delivery was discoverable from the source code[10]; and (4) BNT-US delivered the software to the Government in the United States.[11]

Furthermore, BNT-Denmark applied to register the asserted copyrights in anticipation of litigation, more than a year after it believed the software had been infringed. See Stip. ¶¶ 53, 59, 60. After submitting the copyright applications for registration, BNT-Denmark's counsel corresponded with the Copyright Office about several of the same issues identified above. With

---

[8] See A50 (Windesheim Tr. 90:14-91:10).
[9] See A51-53 (Windesheim Tr. 210:20-11:7, 241:19-42:1); O'Donahue Tr. 230:10-31:4.
[10] See A42 (O'Donahue Tr. 257:3-20).
[11] See A46-47 (Rohrback Tr. 88:22-89:16).

respect to the application for the '490 Registration, BNT-Denmark's counsel requested changes to, *inter alia*, the title, the completion date, and the publication date. See A10-11. With respect to the application for the '500 Registration, BNT-Denmark's counsel requested changes to, *inter alia*, the completion date and the publication date. See A26-27. These communications demonstrate that BNT-Denmark had more than one opportunity to correct any inaccuracies in its applications, but neglected to do so. In light of this evidence, BNT-Denmark's inaccurate representations were inexcusable.

## CONCLUSION

The Copyright Act requires a referral to the Register of Copyrights where a party alleges inaccurate information pursuant to 17 U.S.C. § 411(b)(2). The Government has alleged that the '490 and '500 Registrations contain information known to be inaccurate, and that the inaccuracies are material. The Government respectfully requests that this Motion be granted, and that the Court refer the questions presented in this Motion to the Register of Copyrights.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

GARY L. HAUSKEN
Director

December 3, 2018

s/Scott Bolden
SCOTT BOLDEN
Deputy Director
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, DC 20530
Email: Scott.Bolden@USDOJ.gov
Telephone: (202) 307-0262
Facsimile: (202) 307-0345

*Attorneys for Defendant the United States*

-13-